### EX PARTE A. T. WIMBERLY.

1. CONTESTED ELECTIONS. *County office. Injunction. Contempt.*
   An order of the Chancery Court imprisoning a contestant for obtaining a verdict in violation of its injunction of the prosecution of an election case for a county office is void, and he may be discharged on *habeas corpus.*

2. SAME. *Chancery jurisdiction. Exclusive remedy by statute.*
   Under our system a court of equity has no jurisdiction, under any circumstances, to enjoin the prosecution, before a justice of the peace, of such a case of contested election. The means provided by the statute (Acts 1878, p. 173) are exclusive of all others.

3. SAME. *Statutory tribunal. Writ of prohibition.*
   If the tribunal for such contest is properly organized, no court can interrupt its proceedings within its statutory powers, and the sole remedy for a fatal defect or want of jurisdiction is the common law writ of prohibition, issuing out of a superior law court.

4. SAME. *Injunction. County office.*
   The facts that the justice of the peace is a political friend of the contestant and that the constable is his brother are no grounds for enjoining the contest; but that would afford no excuse for violating the injunction, if, under any possible state of case, its issuance were within the power of the court.

5. SAME. *State officers. Chancery jurisdiction.*
   An injunction from the Chancery Court to restrain a contest of the election for governor and State officers, under Code 1871, § 391, or for legislators, under Code 1871, §§ 388, 389, would be *coram non judice,* and could be disobeyed with impunity.

6. CONTEMPT. *Jurisdiction. Punishment.*

One who violates an order of a court which has jurisdiction of the person and subject-matter is liable to punishment, from which no other tribunal can relieve him.

7. SAME. *Character of want of jurisdiction.*

Want of jurisdiction, which renders the order void, is not such as is evolved from a development of the case, but such as is manifest *ab initio*, as, for instance, failure or inability to give the parties legal notice, or incapacity, in any aspect, to consider the subject-matter.

8. INJUNCTION. *Actions at law. Writ of prohibition.*

There are classes of cases, such as criminal prosecutions, actions of mandamus, and writs of prohibition, in which the general jurisdiction of the Chancery Court, to enjoin actions at law, does not exist, and, if attempted to be exercised by the court, its orders are void.

APPEAL from the decision of Hon. J. W. C. WATSON, Judge of the Second District of Mississippi, on *habeas corpus*, dismissing the petition, and remanding the relator to custody.

*W. S. Featherston* and *R. Davis*, for the appellant, each made an oral argument.

*W. P. Harris*, on the same side, argued the case orally and filed a brief.

1. We cannot separate the attachment proceedings from the order disobeyed, and make them the substantive ground of jurisdiction. The power to punish a party for violating an injunction is essentially and primarily the power to enforce obedience to it. If the court had no jurisdiction to make the order, any steps to enforce it are illegal. A void order cannot, in the nature of things, uphold proceedings to enforce it, and a judgment punishing the recusant party cannot be regarded as a lawful judgment. Bishop Crim. Law, 257; Freeman on Judgments, § 117. It is competent on the writ of *habeas corpus* to inquire into the validity of the order disobeyed. There can be no lawful punishment if no crime has been committed. Judge Black, in *Passmore Williamson's Case*, 26 Penn. St. 9, attempted to support the proposition that proceedings for a contempt are as independent of the order disobeyed as an indictment for perjury is from the case in which it was committed, and that in adjudging the party guilty of a contempt, the court closes the door to any

inquiry into the validity of the order disobeyed.   The cases he cites do not support that view.   If we suppose the Circuit Court to undertake the probate of a will, no one would advance the proposition that a witness sworn in such proceedings could be indicted for perjury, because there was no material issue which that court could decide.   The cases he cites, in which it was held that the judgment for contempt precluded the inquiry whether a contempt had been committed, refer to contempt in the presence and hearing, or in the verge of the court. *Ex parte Summers*, 5 Ired. 149 ; *State* v. *Woodfin*, 5 Ired. 199.   The illustrations given by this ingenious judge are not pertinent.   A court may in many cases have the power to determine the very point of jurisdiction, that is, whether a crime charged was committed on the high seas, or in the body of a county, or within the territorial jurisdiction of the court. The fact may be developed that the crime was not committed within such jurisdiction.   In such cases, the court has jurisdiction to investigate the fact, and although it may turn out, that the court has no jurisdiction to punish, still its proceedings are valid.   It is bound to make the investigation, because the locality is an ingredient of the offence.   These cases differ widely from those in which no investigation can develop anything on which the court can act, as if a court of equity should undertake to investigate a case of murder, or the Circuit Court should assume to probate a will and grant letters testamentary. The cases of contempt in the presence or hearing of the court stand on very different ground from those arising from disobedience of an injunction or other mandate.   From necessity the court must judge exclusively and finally of contempts in its hearing or presence ; but it is otherwise in the other class of cases.   In that class the inquiry may be made whether a contempt has been committed, that is, whether the order disobeyed was one which the party was bound to obey ; for the order is the ground of commitment, and if it is without authority, the commitment is illegal.   Hurd on Habeas Corpus, 327, 340, 341.   If the order was one which the court could predicate, in a proper case, on a subject within its general jurisdiction, then it matters not that in the particular case it was error to make it.   It matters not how palpable the error, the order cannot be

collaterally attached; but when the order is void, a different rule prevails.

2. Proceeding, therefore, to the main question here, we assert that the injunction was void, because the court had no jurisdiction of the subject-matter. The subject-matter was the contested election, in process of being tried. The action of the circuit judge rests on a proposition that places the Chancery Court in a position as respects all other courts which it does not hold, and is plainly wrong. It is, that the general power to grant writs of injunction, especially to restrain proceedings at law, being conceded, every injunction is necessarily valid. It might as well be said that, the general power to make decrees being granted, every decree is valid. We cannot with accuracy point out every case in which the power to grant an injunction exists, but we can point to cases in which the power does not exist. In this case the court or chancellor had no jurisdiction to make any decree touching the subject, and no power, therefore, to issue the injunction. We use the term "jurisdiction" here in a sense different from that in which it is employed when we speak of the difference between legal and equitable remedies. The court of chancery frequently dismisses a bill because the remedy is at law, and a court of law declines to take cognizance of a right that is termed equitable only. These courts have each the right to ascertain the character of the right, and to determine where the remedy lies. Jurisdiction in that sense is a subject of investigation and adjudication by the court. The investigation may develop the fact that the remedy is in one or the other court, or that there is no equity, or no legal cause of action. But we use the term, jurisdiction, here, to indicate that where no investigation can develop any fact on which the court can act, the attempt to exercise it is usurpation; as in the case supposed, of a court of law undertaking to administer an estate, or a court of equity attempting to try a person for a crime. Where jurisdiction or power over a given subject is confided exclusively to a particular tribunal, it is usurpation for another tribunal to undertake to control its action or to decide the cause.

3. The Constitution directs the legislature to provide for de-

termining contested elections. The legislature, in Code 1871, § 391, and the act of 1878 (Acts 1878, p. 173), has provided a special mode of trying the question, and it is necessarily exclusive. It will be conceded that the subject never belonged to jurisdiction in equity. The statute withdraws it from all courts except those to which it is confided. The court or tribunal is called into existence by the petition of the contestant. It has but one function, and that is exclusive. It is required to summon a jury, and this jury is to recount the votes, and say which of the claimants obtained the largest number of legal votes. The statute aims to have the contest determined prior to the time the term of office begins, and requires that within twenty days after the first Tuesday of November the petition shall be filed and a jury summoned, and that the opposite party shall be cited to appear within five days thereafter. The finding of the jury entitles the party to his commission. An appeal is allowed, but not to operate as a *supersedeas*, and the Circuit Court is prohibited from granting a writ of *certiorari*. It is a summary proceeding, made so for the benefit of the public in a large measure. The object is, by a satisfactory test, to ascertain who shall be installed when the term of office begins. The justice of the peace does not exercise the powers of a justice's court. He has no terms of court, and no power of continuing his function. It is obvious that the statute designed to cut off delay. If a justice should continue the trial until after January following, he would violate the law. If any court should grant a *supersedeas* after verdict, that would be illegal.

4. It is plain, therefore, that the Chancery Court cannot take charge of the cause, and postpone it until it shall see fit to allow it to proceed. That court can decide nothing touching the contest. There is no equitable title, nor any point which that court can determine. To enjoin the contestant is to stop the court if he obeys the injunction. What is to become of the judge and the jury? It is clear that to touch the proceeding by injunction is to defeat the statute. The special court cannot survive the interference. To touch it is to destroy it. We deny that this injunction is an ordinary injunction, restraining proceedings at law. Such injunc-

tions proceed on the idea that the legal forum is so constituted that it must be an instrument of injustice because it cannot take cognizance of certain equities in the case. Here, the object is not to change the forum, or to arrest the remedy because it is a legal remedy. The bill rests on the allegation that the particular justice selected is a prejudiced partisan, who has prejudged the cause. This is not a subject of judicial inquiry in any court. Suppose it should be decided that he is a bigoted partisan, and had prejudged the cause, what is to follow? It does not disqualify him. The parties are guarded against a biased jury by an indefinite number of challenges for cause and ten peremptory challenges. It is clearly wrong to suppose that because a Chancellor is armed with the formidable ordinance, the writ of injunction, he may discharge it at anybody or anything, — at this contested election machinery to its destruction. Its effect must be to overthrow the proceeding and defeat the statute. The bill suggests no case in which we can conceive that the court could legally interfere. The course of decisions is adverse to the exercise of the power here exercised in election matters. *Dickey* v. *Reed*, 78 Ill. 261; *Lawrence* v. *Knight*, 1 Brewster, 69; S. C. Brightly's Election Cases, 617; *Hulseman* v. *Rems*, 41 Penn. St. 396; McCrary's Law of Elections, §§ 220, 318, 340; *Erie Railway Co.* v. *Ramsey*, 45 N. Y. 637; *Tyler* v. *Hamersley*, 44 Conn. 419; *People* v. *Sturtevant* 9 N. Y. 263. It is conceded that the Chancery Court can decide nothing touching the contest. The bill presents matter which, decided one way or the other, gives no ground for any decree. Indeed, the bill does not propose to withdraw the case for any decree to be made, but simply to postpone the trial indefinitely. It proposes, in short, to put an end to the special court. How is it to be started again, long after the time appointed by the statute — within which it must act, or be useless for the principal object in view — has elapsed. It is enough to concede that a court may, without inquiry direct or indirect, punish for contempts committed in its presence or hearing, and that no one can with impunity disobey an injunction merely erroneous. To go further than this is not essential to the dignity or the authority of courts.

*A. H. Whitfield*, on the same side.

The Chancery Court had no jurisdiction of the subject-matter, — none to issue the injunction; and the necessary consequence is that it is a nullity. *Lawrence* v. *Knight*, 1 Brewster, 69; *Hulseman* v. *Rems*, 41 Penn. St. 396; McCrary's Law of Elections, §§ 220, 318, 340.  It is possible for a paper to issue from a Chancery Court, signed, sealed and correct in form, and yet which is no more in anybody's way, and disregard of which no more jeopardizes anybody's rights, than if it never had been, because it is a nullity.  Suppose a bill, properly framed, were presented to a Chancellor, setting up that it was unrighteous and fraudulent that a man should say that the sun rose in the east, and praying an injunction restraining a particular individual from thereafter publicly saying so, and the injunction, perfect in form, were issued, and this party afterwards did publicly make the statement, and was arrested and fined, would any reasonable man pretend that the Chancellor had jurisdiction either of the subject-matter or to issue an injunction, or that the fine was not a farce?  If the court has no jurisdiction to issue the writ, it is not only void, but it is the duty of the court in which the proceeding enjoined is pending to make its officers disregard the injunction and to protect them in so doing. *Tyler* v. *Hamersley*, 44 Conn. 419.  In *Dickey* v. *Reed*, 78 Ill. 261, it is held that a writ of injunction is *coram non judice*, if issued in a matter which the court could not, under any circumstances, have power to hear or determine.  *Commercial Bank* v. *Waters*, 10 S. & M. 559, decides that whenever a person is arrested for violating an injunction, the question of its validity is directly presented.  The only effect of the violation of the injunction would be to subject the violator to punishment for contempt, and it would in no wise affect the validity of the verdict and judgment.  In *Robertson* v. *Hay*, 12 S. & M. 566, the court held that " an injunction does not operate upon a cause of action, but as a restraint upon the person "; and that " the corrective," where an injunction has been violated, is not by dismissing the suit which has been proceeded with, but by punishment as for contempt; and cited and reaffirmed *Commercial Bank* v. *Waters*, *ubi supra*.

No counsel *contra*.

CHALMERS, J., delivered the opinion of the court.

The relator who has, by the Hon. A. B. Fly, Chancellor of the Second Judicial District, been committed to six months' imprisonment and sentenced to pay a fine of one thousand dollars for a contempt of court in violating an injunction issued to and served upon him, brings this writ of *habeas corpus* for the purpose of regaining his liberty. That he violated the injunction is not denied: the claim is that it was a nullity because the Chancery Court had no jurisdiction of the subject-matter sought to be enjoined. The relator had been a candidate at the late general election in this State for the office of chancery clerk of Yalobusha County. The registrars of the county, adjudging that his opponent Brannon had been and that he had not been elected, delivered to Brannon the customary certificate of election. Thereupon the relator, within the time and in the mode prescribed by law (Acts 1878, p. 173), instituted before a justice of the peace the proper proceedings for contesting the election. A few days before the time fixed for the trial, Brannon sought and obtained from the Chancellor in vacation, upon grounds to be hereafter noted, an order enjoining and restraining the relator from prosecuting said suit. In violation of the injunction, the contest before the justice was proceeded with, and resulted in a verdict and judgment for the relator. It is for this conduct that he has been committed to jail, and it is the validity of the injunction that we are called upon to determine.

He who knowingly disregards or violates the orders of a court of general jurisdiction acts at his peril, and subjects himself, if the orders be lawful, to a punishment which ordinarily is left to the discretion of the tribunal whose authority has been defied, and from which no other court can release him. From consequences so severe there is usually but one method of escape, viz., by showing that the court whose commands have been disregarded was without jurisdiction of the person over whom, or the subject-matter over which, it assumed to exercise its authority. It will not avail the offender that the order was improvidently made upon insufficient grounds, and would be reversed by a higher tribunal; nor that the court issuing it was not justified in making the particular

order that was disobeyed, but should have made another and a. different one. Neither can he urge that, upon the allegations contained in the application for the order, no facts were stated which made out a case against him or entitled the applicant to any relief. All these are matters to be considered by the court that makes the order, and by the tribunal which reviews its action on appeal; but they cannot be decided by the party himself. It is sufficient for him that a court, which by the laws of his country had the right to consider the subject, has passed its judgment upon it. If that judgment be wrong, he must ask its correction where it was rendered, or appeal to some higher power for relief. If, instead of doing this, he determines to disregard it and take the consequences, he can make those consequences innocuous only by showing that there was an inherent want of jurisdiction in the court to make any order whatever on the subject.

The want of jurisdiction here referred to is something widely different from the sense in which the words are used when we say that a court of law has no jurisdiction to settle a partnership account, or that a court of equity cannot entertain a suit sounding wholly in damages; because it frequently admits of doubt, in the inception of a litigation, whether the particular suit before the court should not have been instituted in some other tribunal; and while the court is considering this question and evolving the facts necessary to its determination, its authority must be respected and its orders obeyed. When we say that a person may safely disobey the commands of a court which is without jurisdiction to issue them, we mean either that it has failed to give, or is incapable for some reason of giving, legal notice to the person whose rights are to be affected, or that the subject-matter of the controversy is one which that court has no right to consider in any aspect whatever. Thus, if a court of law should assume jurisdiction of a suit for divorce, and issue an order for alimony *pendente lite*, the person against whom it was entered might safely disregard it. So, if a court of chancery should undertake to interfere in any way with a criminal prosecution, or to enjoin a convicted person from asking for an executive pardon, its action would be utterly null, and might be so treated by every one. These illustrations

enable us to appreciate the difference between that class of cases where there may or may not be jurisdiction — according as a full development of the facts may show that relief is to be sought in the one forum or the other, and where consequently it is the duty of the court first applied to to have the facts developed, with a view of determining the question of jurisdiction — and that other class of cases where it is at once perceived, from a mere mention of the subject-matter of controversy, that no condition of facts can give jurisdiction. In the one case, the orders of the court must be respected. In the other, they may be treated as the impotent commands of a private person masquerading in the guise of judicial authority. Let us test the case at bar by these principles, and see under which class it falls.

The relator had instituted, in the mode and manner and before the tribunal specially constituted for that purpose, a proceeding to test the question whether he or his opponent had received the greater number of legal votes. He was enjoined from prosecuting that contest until such time had elapsed that a decision in his favor would be immediately succeeded by a term of the Circuit Court of the county, so that his enjoyment of the profits of the office would be short-lived if there should be a reversal in the higher court. The grounds of the application were that the justice of the peace before whom the case was to be tried was a political supporter and a bitter partisan of the relator; that the constable of the court was his brother; that a judgment in his favor would certainly be rendered without regard to the merits of the contest; and that, inasmuch as an appeal did not by the terms of the statute operate as a *supersedeas*, he would, if the case was tried at once, enjoy for a period of five or six months the emoluments of an office to which he had not been elected. It is at once perceived that these grounds were wholly insufficient to justify the issuance of the injunction or any other relief whatever. That a judge is the political or personal friend of a litigant constitutes no ground for enjoining the prosecution of a suit before him, even where he is the sole trier of the facts, and still less so where, as in this case, the issue was to be determined by a jury; nor does the fact

that the jury is to be summoned by a sheriff or constable who is related to the opposing party add any strength to the objections to proceeding with the trial. It is quite manifest that the injunction was improvidently granted, and doubtless would have been, and certainly should have been, dissolved upon motion. This, however, as we have seen, affords no excuse for violating it if under any possible state of facts its issuance would have been within the power of the court. The question presented, therefore, is whether, under our system of laws, there is any jurisdiction in a court of equity, under any circumstances, to enjoin the prosecution of a case of contested election. If the ultimate object of the injunction be to withdraw from the special tribunal created by the statute the determination of the contest, and to give to the Chancery Court the settlement of the question as to who has been elected, it is plainly beyond the jurisdiction of the court. Neither by the principles of the English court of chancery nor by our statutes can courts of equity take cognizance of such subjects. Such contests partake as much of public as of private right, and belong rather to the political than to the judicial department of the government; and in so far as they involve the property rights of the contestants to the powers and emoluments of the office, they present purely legal issues, determinable in a court of law. We are not aware that, even in States where there exist no statutory provisions for the speedy settlement of such contests, they have ever been held to fall within the jurisdiction of courts of equity, and certainly it is well settled that when statutory regulations on the subject have been adopted, the means provided by the statute are exclusive of all others. *Hulseman* v. *Rems*, 41 Penn. St. 396; *Dickey* v. *Reed*, 78 Ill. 261; McCrary's Law of Elections, §§ 318–458, and authorities cited.

But the bill for an injunction in this case did not seek to draw to the Chancery Court a settlement of the questions involved in the proceedings before the justice, but only asked, for special reasons, that those proceedings might be temporarily stayed. Conceding, then, that a court of chancery cannot try a contested election case, may it enjoin a trial of such a case by the tribunal which alone has authority to try it? The power of the Chancery Court to enjoin actions at law is ancient

and indisputable; and hence it is argued that, as it has this power, it must necessarily have authority to determine whether a particular action should be enjoined or not; that while it is determining this question, it has the right to make all necessary preliminary orders, and to punish those who violate them. If it be, indeed, a question whether an injunction shall issue in the special case in hand, the position is indisputable, and it is undoubtedly true that he who disobeys an order issued while the court is considering such a question is punishable even though the order be, as said by the Court of Appeals of New York, "hastily, improvidently, or wickedly granted." *Erie Railway Co.* v. *Ramsey*, 45 N. Y. 637, 644. But a very different question is presented when the issue is not whether the court has authority to enjoin the special action at law complained of, but whether it can enjoin any action whatever belonging to a general class of actions; for while it is true that most actions at law may be enjoined, there are large classes of them as to which no state of facts will justify the interposition of a court of equity. It is well settled that criminal prosecutions, whether by indictments or information, actions of mandamus, and writs of prohibition, can, under no circumstances, be enjoined by a court of chancery. 2 Story Eq. Jur. § 893. It is equally clear that under our statutes prescribing the method of contesting before the legislature the rights of the members to their seats (Code 1871, §§ 388, 389), or of contesting before the same body the result of elections for governor and other State officers (Code 1871, § 391), the Chancery Court could not enjoin the prosecution of such contests, and if it assumed to do so, its orders might be disobeyed with impunity. It is thus seen that, notwithstanding the general jurisdiction of a court of equity to enjoin actions at law, the power is not universal, and that there are large classes of actions where no such power exists, and where, if it is attempted to be exercised, its acts will be mere *brutum fulmen*, conferring no rights if respected, and imposing no penalties if disobeyed. Whether contested election cases involving the right to county offices are of this character, under our laws, must be determined by an inspection of the statutes and a consideration of the objects intended to be subserved by them.

Our general elections for county officers take place biennially on the first Tuesday in November. The officers chosen at them are installed in office on the first Monday in January thereafter. The boards of registrars of each county are required to assemble at their respective county seats by twelve o'clock on the second day after the election, count the votes, and deliver to the candidates shown by the ballots to have received the largest number of votes, a certificate of that fact, and immediately to forward to the Secretary of State, at the capitol, an additional certificate of the result as to every candidate voted for at the election. Code 1871, § 377. Any person dissatisfied with the result as thus announced may, *within twenty days after the election*, file his petition for a contest before any justice of the peace of the county. The justice shall thereupon issue a summons to the party holding the certificate, returnable in *five* days, and shall make up an issue to be tried by a jury as to which candidate has received the greatest number of legal votes, and no other question is permitted to be submitted to the jury. Each party shall have ten peremptory challenges besides challenges for cause. If the jury shall find against the person holding the certificate of the registrars, the justice shall enter up a judgment in his favor, and forthwith forward a duly certified transcript of the proceedings to the governor, who shall at once issue a commission to the person found by the jury to have been elected. No court can issue a writ of *certiorari* to review said proceedings, and though the unsuccessful party may appeal to the next term of the Circuit Court, and there have a trial *de novo*, such appeal shall not operate as a *supersedeas*. Acts 1878, p. 173.

The manifest purpose of these provisions is to prescribe a method of determining contests growing out of county elections, which by its simplicity, convenience of access by the parties, and celerity of proceeding shall culminate in a verdict ascertaining the result of the election before the period fixed by law for the installation of the officer. No court by writ of *certiorari* can transfer the proceedings to any other tribunal, and though the right of appeal is preserved, it does not prevent the installation of the successful party. The right given to the contestant of choosing the justice before whom he will inaugurate his

contest, and the denial of a *supersedeas* to his unsuccessful opponent, give the former a great advantage ; but we cannot inquire into the wisdom of the law, and it is evident that these provisions sprang from the anxiety of the lawgiver to ensure such speedy adjudication of the case that, by the first Monday in January, no doubt should exist as to the person entitled to qualify. The public interest in this question is to override the private interest of the parties. If a court of chancery is at liberty to interrupt the proceedings by writs of injunction, the whole scheme is defeated. Even a temporary injunction might produce complications difficult, if not impossible, of solution. The tribunal created by the statute is a special one, *pro re nata*, unknown to our ordinary jurisprudence, and must die with the occasion that brought it into being. The justice of the peace presides, not by virtue of his functions as such, but only because designated by the statute. The court when organized is not a justice's court. It has no terms. It cannot continue the case to a distant day or even adjourn its sessions, except from day to day as the exigencies of the trial may demand. If once dispersed, how is it to be reassembled ? If shattered by the weight of a Chancellor's injunction, how are its several parts to be reunited ? If in the case at bar, after the court had been opened and the jury sworn, the injunction prayed had been made perpetual, how could there ever have been an investigation of the question as to who had received the highest number of legal votes ? These objections, if not insuperable (and we are not to be understood as denying the power of the justice to reconvene the jury under any circumstances), suggest the great practical inconvenience of permitting the interference of a court of equity.

Our conclusion is, that the jurisdiction of the special tribunal created by the statute for the determination of an election contest is exclusive ; that when such tribunal has been organized within the time and in the manner prescribed, it cannot be interfered with by any other court, so long as it confines itself to the matter confided to it by the statute. If it has not been so organized, and if the defect in its organization is so fatal as to leave it without jurisdiction, or if, being properly organized, it is exceeding its jurisdiction in its conduct of

the trial, the only remedy is by the common-law writ of prohibition, issuing out of some superior common-law court; and this writ can be invoked only upon grounds which are jurisdictional in their character. It follows from these views that the injunction issued by the Chancellor was a nullity, and that the relator did not subject himself to punishment in disregarding it. The action of the circuit judge, dismissing the writ of *habeas corpus* and remanding the relator to confinement, is reversed, and an order will be entered here for his discharge.                              *So ordered.*