STAPLES, Secretary of State, et al. v. STATE ex rel. KING et al. (No. 8951.)

(Court of Civil Appeals of Texas. Dallas. March 22, 1924.)

1. Injunction ⚖219—Contempt not predicable on violation of void order.

Contempt proceeding cannot be predicated alone on violation of injunction order void because the court was without jurisdiction to entertain the suit, the relators not having legal capacity or right to institute and maintain it.

2. Appeal and error ⚖488(2)—No contempt in violating void order pending appeal.

There is no contempt on the theory of the jurisdiction of the appellate court being thereby rendered nugatory by removal of the subject-matter of the appeal beyond its control by violation, pending appeal therefrom, of an injunction against certifying a name to be placed on an election ballot, void because the trial court was without jurisdiction to entertain the suit, the relators not having legal capacity or right to institute it; the only subject-matter that can exist in an appellate court in such a case being the power to take such cognizance of the matter as is necessary to enable it to determine and pronounce the proceeding below a nullity.

Vaughan, J., dissenting.

Original proceeding for contempt, instituted by motion in the suit by the State of Texas, on the relation of C. E. King and others, against S. L. Staples, Secretary of State, and others, reported in 244 S. W. 1064. Rule to show cause discharged.

See, also, 112 Tex. 61, 245 S. W. 639.

Luther Nickels and W. W. Nelms, both of Dallas, and J. S. Callicutt and Richard Mays, both of Corsicana, for appellants.

W. A. Keeling, Atty. Gen., and L. C. Sutton, Asst. Atty. Gen., for appellees.

JONES, C. J. This is an original proceeding for contempt in this court, instituted on the motion of the relators filed in this cause while it was pending on appeal. The parties sought to be held in contempt are S. L. Staples, secretary of state, one of the appellants in the above cause, and W. A. Keeling, Attorney General of the state.

The basis for the contempt proceedings appear from the following brief statement:

The relators, who are appellees in this cause, C. E. King, P. C. Short, and L. E. McGee, filed in the district court of Navarro county, in the name of the State of Texas, and on their own relation, quo warranto proceedings to prevent the secretary of state from certifying to the election boards of the state, to be printed on the official ballots for use in the approaching general election to be held on November 7, 1922, the name of Earle B. Mayfield as nominee of the Democratic party for the office of United States Senator.

The first paragraph of the petition states the capacity in which appellees brought said suit, and is as follows:

"Comes now the state of Texas, ex relatione C. E. King, who resides in Navarro county, Tex., and who is a citizen of said county and state, and P. C. Short and L. E. McGee, who reside in Dallas county, Tex., and come said relators as petitioners in their own right, and complain of," etc.

It is alleged that the said Mayfield had forfeited his right to have his name so placed on the official ballots to be voted in the ensuing election because of violations by him and by others in his interest of certain statutory restrictions and regulations in reference to expenditure of money in political campaigns in this state. It was apparent from the petition that relators did not have any other interest in the subject-matter of the suit than that possessed by every other citizen of this state. In other words, it was the redress of a public wrong sought to be accomplished by said suit, and not that of a private wrong which had deprived these relators of some valuable right.

The suit was filed on October 3, 1922, and on presentation of the petition to the district judge, he indorsed his approval on same, ordered it filed, and ordered process to issue thereon returnable on the 16th day of October, 1922, and set the cause for hearing on said date. The prayer for a temporary writ of injunction was also granted on condition that a proper bond in the sum of $1,000.00 be filed. The said bond was approved and filed and the temporary writ of injunction issued restraining the said secretary of state from certifying to the election boards the name of Earle B. Mayfield for appearance on the official ballots as such nominee for said office, and restraining the election boards from having printed said name on the official ballots. Notice of appeal from this order was duly entered by appellants on the 10th day of October, 1922, and the record was duly filed in this court on the 11th day of October. This cause was advanced by this court and set down for an early submission, at which time it was duly submitted. After its submission this court deemed it advisable to certify to the Supreme Court of Texas for decision certain questions involved in the suit. These questions submitted for a determination by the Supreme Court the issue as to the legal capacity of appellees to institute and maintain the suit filed under section 9, c. 88, Acts 36th Leg. (Vernon's Ann. Civ. St. Supp. 1922, art. 3174¼b); also the issue of the constitutionality of said section 9 if it should be held that appellees were authorized by said section to bring said suit, either in their own right or in the name of the state of Texas.

As shown by its caption, said chapter 88 is an act designed to prevent the control of primary elections by the use of money, and to regulate and limit the expenditure of money to promote or defeat the candidacy of persons for nomination for office in primary elections in this state, etc. Said section 9 reads as follows:

"If any candidate shall knowingly violate any of the provisions of this act or shall knowingly permit or assent to the violation of any provision of this act by any campaign manager or assistant campaign manager or other person, he shall thereby forfeit his right to have his name placed upon the primary ballot or if nominated in the primary election, to have his name placed on the official ballot at the general election, and proceedings by quo warranto to enforce the provisions of this section or to determine the right of any candidate(s) alleged to have violated any of the provisions of this act to have his name placed on the primary ballot or the right of any nominee alleged to have violated any of the provisions of this act to have his name placed upon the official ballot, for the general election may be instituted at the suit of any citizen in the district court of any county, the citizens of which are entitled to vote for or against any candidate who may be charged in such proceedings with having violated the provisions of this act. All such proceedings so instituted shall be advanced and summarily heard and disposed of by both the trial and appellate courts."

The Supreme Court announced its decision on the questions certified on the 27th day of October, 1922, and is to the effect that the petition in the attempted quo warranto proceedings in the district court of Navarro county was fatally defective, in that, under the law of this state, and under the clear intendment of said section 9, no suit of this character could be filed in the name of the state of Texas except on the petition of either the Attorney General of the state or a district or county attorney, and answered the question in reference to the legal capacity of appellees to institute said proceedings in the following language:

"Appellees were not possessed of legal capacity or right to institute and maintain this suit, and therefore the district court and the judge of the district court of Navarro county were without jurisdiction to act upon or hear same."

The constitutionality of said section 9, as construed by the court, requiring either the Attorney General or a district or county attorney of the state to join in any suit filed under said article, was upheld.

The opinion of the Supreme Court in answer to the said certified questions was immediately sent to this court, and, on the 28th of October, 1922, this court delivered its opinion in conformity to the holding of the Supreme Court, and accordingly entered its judgment in this cause to the effect that appellees did not have the legal right to bring and maintain this suit, and that by reason thereof the judgment of the court below granting the temporary writ of injunction

                              (260 S.W.)

was reversed and the said writ of injunction in all things dissolved and held for naught.

The decision of the Supreme Court on certified questions is reported in 112 Tex. 61, 245 S. W. 639, and the decision of this court is reported in 244 S. W. 1066.

After the Supreme Court had rendered its decision pronouncing the district court of Navarro county without jurisdiction to hear and determine the cause presented, the secretary of state, acting under a statutory duty, requested the Attorney General to advise him in reference to his duty in the premises, and on October 28, 1922, the Attorney General, after a careful consideration of the matter, in consultation with his assistants, gave the following opinion, and advice to the secretary of state:

"In response to your inquiry you are respectfully advised that it is now within your authority and is your legal duty to certify to the proper local officials the name of Earle B. Mayfield as the nominee and candidate of the Democratic party of this state for the office of United States Senator to be printed upon the official ballots as such in the ensuing general election.

"The decision of the Supreme Court of Texas handed down on yesterday is to the effect that the parties plaintiff in the case of State ex rel. C. E. King et al. v. S. L. Staples, Secretary of State, et al., in the district court of Navarro county, were without legal capacity or authority to institute the suit in quo warranto, and that therefore the district court of Navarro county was and is without jurisdiction of the cause. It necessarily follows that the injunction issued by that court was void ab initio, and is of no effect.

"Yours very truly,

"[Signed] W. A. Keeling, Attorney General.

"This opinion has been considered in conference of the members of the Attorney General's Department, and is now ordered recorded.

"[Signed] W. A. Keeling, Attorney General."

Upon receipt of this advice the secretary of state sent by wire to the various election boards in this state his certificate that Earle B. Mayfield was the nominee of the Democratic party in this state, and that his name should be placed on the official ballots, as such, to be furnished the voters on the general election to be held on November 7, 1922.

Immediately upon this court rendering its opinion on the said 28th day of October, appellees filed a motion for rehearing, and this motion was pending at the time the Attorney General advised the secretary of state as set out above, and at the time the secretary of state sent his said certificate to the said election boards.

Appellees, On October 30th, filed their said motion praying that the secretary of state and Attorney General be ruled to show cause why they should not be adjudged in contempt of this court and punished therefor because of their acts, as above detailed. These said acts were alleged to be in violation and destruction of the jurisdiction of this court in this case, and were taken for the purpose and with the intent of destroying, at least in substantial part, the subject-matter of this appeal, and for the purpose and with the intent of rendering the jurisdiction and action of this court ineffectual, and, further, for the purpose and with the result of hindering, delaying, interfering with, and thwarting the due and orderly administration of justice in said cause by this court.

Upon consideration of the motion, this court entered an order requiring the secretary of state and Attorney General to appear and show cause why each should not be adjudged to be in contempt of this court and punished therefor in the manner and form provided by law. An appearance was required to be made on the 6th day of November, 1922. On said date the said parties duly made answer and disclaimed any purpose by their said acts to do other than show the highest regard for this court and its jurisdiction, but claimed that the injunction order and the writ were void, and in no way legally restrained them from performing the acts in question, and that a void order of a court could not justify them in failing to perform the statutory duties that they did perform by the doing of the acts for which they were sought to be held in contempt of this court. It was made certain by allegation that this high public duty of the secretary of state could not be performed if there was any further delay. The order of this court requiring the parties to show cause is published in full in 244 S. W. at page 1067, to which reference is made.

[1, 2] The order of the district court of Navarro county granting the temporary writ of injunction and the writ of injunction issued thereunder were both void, because the court and the presiding judge were without jurisdiction to entertain the suit filed, and without jurisdiction to enter the order authorizing the issuance of the writ of injunction. No contempt proceedings, then, can be predicated alone upon the violation of this injunction. If such proceedings can find a basis anywhere, it must be on the theory that the acts of the secretary of state and the Attorney General have rendered nugatory the jurisdiction of this court by removing the subject-matter of the appeal beyond its control. The specific question then, for decision is: Was the lawful jurisdiction of this court thus wrongfully invaded and the subject-matter of this appeal thus wrongfully destroyed?

A void order defines no right and prohibits no wrong. It leaves the parties in favor of whom or against whom such an order was issued in the same position they occupied previous to its issuance. It was the clear and manifest statutory duty of the secretary of state to certify to the election boards the name of Earle B. Mayfield as the nominee of

the Democratic party for United States Senator, and the clear and manifest statutory duty for said election boards to have said name so printed on the official ballots to be furnished the electors in the ensuing general election. Was this duty annulled or its performance forbidden by the order of the district judge of Navarro county on October 3d, 1922? Manifestly, such would be the result if said order was either only erroneously or improvidently granted; for beyond question the district court of Navarro county is clothed by law with powers to enter such an order by a suit that is sufficient on its face to call those powers into action. The powers of jurisdiction are not limited to making correct decisions but include power to decide wrong as well as right. Under the decision of the Supreme Court in this case, however, the Navarro county district court was entirely without jurisdiction to act, and hence none of its jurisdictional powers were called into existence. In contemplation of law, it was not a district judge, clothed with all the powers given such an official, who entered this order, and it did not emanate from a district court, because the pretended suit was no suit recognized in law or equity.

The right of Mayfield to have his name printed on the ballot and the right of the secretary of state to perform his official duty in respect thereto were not affected by such proceedings. These rights remained as though no suit challenging the exercise of them had ever been filed. If it were otherwise, some force would be given to a void order. At least from the 3d of October to the 10th of October, the day on which the appeal to this court was perfected, the secretary of state was just as free to perform his statutory duty in respect to the matter at issue as he had been previous to that time.

What was this status after the secretary of state had given notice of appeal and had filed the record in this court and the jurisdiction of this court had attached? Certainly this status was not changed by reason of anything that could emanate from this void injunction order. The order being a nullity when the notice of appeal was given, it necessarily remained a nullity when the record was filed in this court. Manifestly, then, if the secretary of state was prohibited to perform the official duty resting on him, it must come from the fact that in doing so he would either impair or destroy the jurisdiction of this court over the subject-matter of the appeal. This involves an inquiry as to what is the subject-matter of an appeal from the judgment of a court that had no jurisdiction to enter the judgment. To state the question in exact conformity to the facts of this case: What was the subject-matter of the appeal from the order entered on the presentation of this petition to the court when the petition was insufficient to invoke the juris-

diction of the court or to bring into action the powers of the judge presiding in said court? In considering this question, it must be borne in mind that the nullity of the order entered did not date from the time of the pronouncement of such fact by this court, but that said order was void ab initio. The subject-matter of the appeal would not be destroyed or affected by whether the secretary of state exercised his right to ignore the void order or to give it a consideration that the law did not enjoin upon him to do. The only subject-matter that can exist in an appellate court on an appeal from an order or judgment entered by a court without jurisdiction to make the order or enter the judgment is the power to take such cognizance of the matter as is necessary to enable it to determine and pronounce the proceedings in the lower court a nullity. The subject-matter dealt with by the order or judgment cannot be dealt with by the appellate court, because in contemplation of law there is no judgment or order. Its ability to exercise its jurisdiction, then, is not affected by whether the void order is observed or ignored. This court was just as able to pronounce the judgment it did pronounce (and the only one it could have pronounced) as it would have been had the acts complained of never been committed.

The authorities are clear and uniform that the violation of a void court order does not render the violator liable for contempt. One of the best statements of the rule is given by the author to the note in 16 L. R. A. (N. S.) 1063, in the case of McHenry et al. v. State of Miss.:

"There is substantially no dissent among the courts to the proposition that a contempt of court, based upon failure of the contemner to comply with an order of the court, or upon his violation of such an order, must rest upon a valid order. It is equally well settled that, in order to make a valid order, a court must not only have jurisdiction of the person and subject-matter, but also power to make the particular order involved; that is, the order must be within the inherent power of the court to make, and within the issues of the cause in which it is made."

To the same effect are 6 R. C. L. 505; 13 C. J. § 14, p. 13; K. C., M. & O. Ry. Co. v. Cole et al. (Tex. Civ. App.) 145 S. W. 1098; Ex parte Fisk, 113 U. S. 713, 5 Sup. Ct. 724, 28 L. Ed. 1117; In re Sawyer, 124 U. S. 200, 8 Sup. Ct. 482, 31 L. Ed. 402.

The case of K. C., M. & O. Ry. Co. v. Cole, supra, is not distinguishable in principle from the instant case. Cole et al. were property owners in the town of Sweetwater, and had brought an injunction suit to restrain the railway company from removing its shops and principal offices from Sweetwater to San Angelo, Tex., and also to restrain the railway company and its officials from filing

with the secretary of state an amended charter making this change in the location of its shops and offices. On presentation of this petition to the judge of the district court of Nolan county, of which Sweetwater is the county seat, a temporary writ of injunction was granted restraining the railway company and its officials from removing the shops and offices, and from filing its amended charter with the secretary of state, pending the hearing of the litigation. An appeal from this order was taken by the railway company to the Court of Civil Appeals for the Third Supreme Judicial District, and, upon the hearing of this appeal, the trial court was reversed and the temporary writ of injunction dissolved. Before the time for filing a motion for rehearing had passed, and upon the day a motion for rehearing was filed, but preceding such filing, the amended charter was filed with the secretary of state. A motion similar to the one in this case was filed by appellees, asking that the officials of the railway company be held in contempt of court for the violation of the temporary injunction by the filing of the said amended charter. A rule was entered requiring these officials to show cause why they should not be held in contempt and punished therefor. Upon hearing of these proceedings it was shown that the presiding judge of the district court of Nolan county was disqualified to act in the case, in that he owned property situated in said town of Sweetwater and stood in a similar relation to the suit as did appellees. After holding that by reason of this fact the said judge was disqualified to sit in the case, the court disposed of the contempt proceedings in the following language very applicable to this case:

"In this state, as we have seen from the article and section of the Constitution herein before referred to, as may also be seen by reference to Revised Statutes 1895, art. 1068, there exists a positive constitutional and statutory prohibition against any judge sitting in 'any cause' wherein he may be interested, and it necessarily follows, we think, that the act of the judge of the Thirty-Second judicial district, in granting the order for the temporary writ of injunction in this case, was coram non judice, and utterly void. Respondents, therefore, were not compelled to observe it. While the writ of injunction is one of the most important in the law in aid of obtaining preventive relief, and while courts of equity are ever zealous in preserving due respect for all of its orders, and in proper cases manifest no hesitation in imposing severe penalties for disregard thereof, yet the composition of our free institutions is such that our citizens are not compelled to obey or observe the decree of an individual or court wholly without power to make it. And it seems well settled, that in such cases punishment for contempt will not lie. See 2 High on Injunctions, § 1425; Walton et al. v. Develing et al., 61 Ill. 201; Dickey v. Reed et al., 78 Ill. 261; Ex Parte Wimberly, 57 Miss. 437."

The only distinction that can be suggested to exist between the reported case and the instant case is that in the reported case the injunction order was void by reason of the disqualification of the judge who entered the order. In the instant case the injunction order was void by reason of the fact that the court and the presiding judge were without jurisdiction to determine the cause. The result is precisely the same, for we know of no degrees in void judicial orders. The one was just as ineffectual to accomplish the purpose of the suit as was the other. Furthermore, the acts complained of in the reported case went just as far towards destroying or rendering ineffectual the subject-matter of the appeal as did the acts in the instant case.

It is claimed by appellees that the case of Merrimack River Savings Bank v. Clay Center, 219 U. S. 527, 31 Sup. Ct. 295, 55 L. Ed. 320, Ann. Cas. 1912A, 513, announces a doctrine contrary to the views above expressed, and one that is particularly applicable to the facts of this case. The Merrimack River Savings Bank was a creditor of the Clay Center Light & Power Company, in that it was the owner of the bonds issued by said power company and secured by a mortgage on its plant. The city of Clay Center had declared the franchise of the power company either at an end or forfeited, and had ordered it to remove its poles and wires and other property from the streets and alleys of the city, and had also directed certain of its officials, if this order was not observed by the power company, to cut down the poles and remove them and the wires from the streets. An injunction suit was brought by the bank in the federal court seeking to enjoin the city and certain named officials from putting into execution its order. It appears that a temporary writ of injunction was obtained. Upon a hearing in the circuit court the injunction was denied and the bank's suit dismissed, but the circuit judge issued an order staying the execution by the city of Clay Center and its officials of the order to remove the property from the city streets until the matter should be finally passed upon by the Supreme Court of the United States. The appeal of the bank was dismissed by the Supreme Court of the United States without written opinion, and, before the time had elapsed for the filing of a motion for rehearing by the bank, and before any mandate had issued out of the Supreme Court, the officials of the city proceeded to carry out the former order of the governing body of the city of Clay Center by cutting down the poles and removing them and the wires from the streets. Contempt proceedings were filed against the city and its officials in the Supreme Court of the United States, and,

upon hearing, they were adjudged guilty of contempt of court.

As an apparent basis for the holding of the Supreme Court, and in the very beginning of the opinion, it is stated:

"That the circuit court, to the end that the status quo might be preserved pending such appeal, had the power to continue an injunction in force by virtue of its inherent equity power is not doubtful."

The injunction was continued in force by a valid order and for the very purpose of doing that which the action of those held in contempt destroyed. This statement is sufficient to show the distinction in the reported case and the case at bar. In the reported case there was a valid subsisting order, legally capable of staying the hands of those who violated it. In the instant case there was a void order, legally capable of staying no hand or preventing no action of those against whom it was directed. Again, in the reported case there was an appeal from a valid order bringing to the Supreme Court for review the subject-matter with which the order dealt, while in the instant case there was a void order, capable of bringing to this court for review no part of the subject-matter with which it dealt.

It is therefore the opinion of this court that the alleged and admitted acts of the secretary of state and Attorney General, for the reasons stated, do not form any basis for contempt proceedings, and the parties are discharged from the rule directing them to show cause; and it is so ordered.

VAUGHAN, J., dissenting.