434 So.2d 1345 (1983)
Nathaniel GADSON
v.
Shirley GADSON.
No. 54129.
Supreme Court of Mississippi.
July 20, 1983.
Kendall Reeves, Ladner & Emil, Gulfport, for appellant.
Thomas J. Long, Gulfport, for appellee.
En Banc.
ROY NOBLE LEE, Justice, for the Court:
Nathaniel Gadson has appealed from a decree of the Chancery Court, First Judicial District of Harrison County, Honorable John S. Morris, presiding, adjudging him in contempt of the court for failure to perform the provisions of a divorce decree dated September 17, 1981, which required him to pay alimony and child support to his wife, Shirley Gadson. Gadson contends that the decree finding him in contempt should be reversed because (1) the proof shows his inability to pay the support, (2) the amount of arrearage is incorrect, and (3) the divorce decree is void. We address only the third proposition and reverse.
Appellant and appellee were married April 1, 1972, and one child, Nadia, was born in 1976. The parties separated June 15, 1981. Subsequently, appellee filed a suit for divorce averring habitual cruel and inhuman treatment as the ground. On June 23, 1981, appellee filed a motion for *1346 temporary alimony, child support and suit money, and, on August 18, 1981, the chancery court entered an interlocutory decree for $900.00 per month support, the payments to begin August 21, 1981. On August 24, 1981, appellee filed a petition to cite appellant for contempt because of his failure to pay the temporary support.
Appellant was adjudged in willful contempt on September 15, 1981, for failure to comply with the temporary order, and was ordered imprisoned in the Harrison County jail until he purged himself of that contempt. He was released from jail September 21, 1981, but, while he was still in jail, appellee was awarded a divorce September 17, 1981. That final divorce decree ordered appellant to pay $200.00 per month alimony, $400.00 per month child support, $239.00 per month house payment and $800.00 attorney's fees, and granted appellee permanent child custody and exclusive use of the home and an automobile. Appellant filed a motion November 2, 1981, to set aside the decree or, in the alternative, for modification of same. On February 26, 1982, appellee filed a petition against appellant for contempt charging him with failure to comply with the final divorce decree. That petition was heard on March 17, 1982, and the chancellor found appellant was in arrears in the amount of $4,195.00, that he was in willful and contumacious contempt, and he was ordered imprisoned in the Harrison County jail until he purged his contempt by paying that sum. He was also ordered to pay attorney's fees in the amount of $1,000, and the aggregate amount required to purge the contempt was $5,195.00.
An appeal was prosecuted from the final divorce decree of September 17, 1981, on which decree this contempt case is founded. On March 16, 1983, 429 So.2d 568, we reversed and remanded that decree to the lower court for a trial on the merits because said decree was entered without any prior notice to appellant and his attorney; appellant's answer and cross-bill were stricken; and the final decree of divorce was entered without notice to them. The answer and cross-bill of appellant and the temporary decree of August 18, 1981, were reinstated.
We now consider the effect of reversing the September 17, 1981, divorce decree on the adjudication of contempt for failure to comply with that decree. In Sinquefield v. Valentine, 160 Miss. 61, 133 So. 210 (1931), Sinquefield was ordered to deliver custody of his children to their grandfather and was adjudged in contempt of court for failure to do so. The order was entered without notice to Sinquefield. The Court said:
The question, therefore, in the case is whether or not the father, in refusing to turn over the custody of his children to their grandfather, under a void order of the court, requiring him to do so, could be adjudged in contempt of court. On the authority of McHenry v. State, 91 Miss. 562, 44 So. 831, 833, 16 L.R.A. (N.S.) 1062, the question must be answered in the negative. The court said in that case, among other things:
"It is a misconception to suppose that only in a case where the court has no jurisdiction over the particular suit can one safely disobey the order of a court. A court may have jurisdiction, in a general sense, of the particular suit, as regards both its subject-matter and the parties to it, and yet the court may make, in the trial of that particular case, an order which, regard being had to the nature of the suit, the court has no power whatever to make. Such an order is an absolute nullity, not a mere irregularity; and both where general jurisdiction at all to entertain the particular cause is wanting, and also where, such general jurisdiction existing, the court, in the progress of the trial of the particular cause, makes an order wholly void, there is wanting utterly the predicate for any contempt process for disobedience to such order." 160 Miss. at 64-65, 133 So. at 210-211.
In McKinney v. McKinney, 374 So.2d 230 (Miss. 1979), an original divorce decree was amended without service of process on McKinney which amendment required payment of child support. Mrs. McKinney subsequently filed a petition for contempt against McKinney, and, without his presence, the chancery court adjudged him in contempt and ordered his arrest and incarceration. *1347 This Court reversed the judgment of contempt, stating that the decree was entered without proper service of process and was void.
Cox v. Cox, 279 So.2d 615 (Miss. 1973), involved separate maintenance ordered to be paid by Cox to his wife. He declined to pay the amounts decreed against him and, at the time of the hearing, had defaulted in the total sum of $3,237.02. The lower court said: "It will not be the purpose of the Court at this hearing to consider the charge of criminal contempt or to punish for criminal contempt... ." [279 So.2d at 616]. However, that court held Cox to be in civil contempt and ordered him to remain in jail until the full amount of $3,237.02 was fully paid. The exact situation and facts prevail in the Cox case as in the case at bar. The decree awarding separate maintenance to Mrs. Cox was reversed and the Supreme Court entered a decree for Cox.
This Court, upon reversing the void decree awarding separate maintenance to Mrs. Cox and discharging her husband, said, "Cox, having been relieved of the obligation to pay, is entitled to immediate release." [279 So.2d at 616].
The decisions in the Sinquefield, McKinney and Cox cases, supra, control the question involved in the present case and require that the judgment of the lower court holding appellant to be in contempt of the September 17, 1981, divorce decree be reversed, vacated and the appellant discharged.[1]
REVERSED AND APPELLANT DISCHARGED.
PATTERSON, C.J., WALKER and BROOM, P.JJ., and BOWLING and DAN M. LEE, JJ., concur.
ROBERTSON, HAWKINS and PRATHER, JJ., specially concur.
ROBERTSON, Justice, specially concurring:

I.
While I concur in the result reached by the majority  that Nathaniel Gadson should now be discharged from all obligations under the chancery court's order of contempt  I think more need be said. In my view the judgment of the chancery court holding Nathaniel Gadson in civil contempt is in no sense void. It was correctly entered and should be affirmed.
Upon reversal of the underlying divorce decree ordering, as it did, payment of alimony and child support, the contempt decree has spent its force. For this reason appellant Gadson should now be discharged. But when the majority holds that the contempt decree must be "reversed, vacated", clearly implied is the notion that it was error for the chancery court to have entered it in the first place. Most assuredly the chancellor did not so err.
The divorce decree was valid and enforceable from September 17, 1981, through and including March 16, 1983. At any time between those dates that Nathaniel Gadson chose to flout the terms of the decree, the chancery court was duty bound to hold him in contempt. Under the facts of the case, Nathaniel Gadson was lawfully incarcerated from March 17, 1982, until March 16, 1983. I do not concur in any suggestion that there was anything illegal or unlawful about Gadson's incarceration during that time span.

II.
The question raised on this appeal is fundamental. It goes to the heart of a citizen's relationship with the law which secures his liberty and protects his rights. Here, we are faced with a situation where a litigant has taken it upon himself to disregard a decree issued by a court of competent jurisdiction. Our decision today in no way condones Mr. Gadson's behavior, nor will it *1348 insulate him from further punishment if he chooses to follow a similar course in the future. Our decision today should in no way suggest that the chancery court acted erroneously or unlawfully when it held Nathaniel Gadson in civil contempt.
When faced with an erroneous decree, a citizen's sole and adequate recourse lies in the corrective powers of the trial and appellate process. Until the adverse decree has been vacated, he must comply. This is true as a matter of institutional necessity. While there rests on the judiciary a heavy duty to administer the law in a way that is deserving of the respect of the people, the citizen's concomitant obligation of fidelity to law includes respect for court decrees he despises.
I have always understood it to be fundamental that, when faced with an injunctive decree or other similar order commanding or prohibiting performances of certain acts, a citizen is bound to comply, pending a petition for dissolution or modification and, subsequently, pending appeal. Howat v. Kansas, 258 U.S. 181, 189-190, 42 S.Ct. 277, 280-281, 66 L.Ed. 550, 559 (1922). This is so even though the decree is later vacated. Walker v. City of Birmingham, 388 U.S. 307, 87 S.Ct. 1824, 18 L.Ed.2d 1210 (1967). A person may be guilty of criminal contempt even though the underlying decree be vacated on grounds that it was beyond the court's power. United States v. United Mine Workers, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947).
Speaking broadly, the Supreme Court in Howat v. Kansas, supra, has said:
An injunction duly issuing out of a court of general jurisdiction with equity powers, upon pleadings properly invoking its action, and served upon persons made parties therein and within the jurisdiction, must be obeyed by them, however erroneous the action of the court may be, even if the error be in the assumption of the validity of seeming but void law, going to the merits of the case. It is for the court of first instance to determine the question of the validity of the law, and until its decision is reversed for error by orderly review, either by itself or by a higher court, its orders based on its decision are to be respected, and disobedience of them is contempt of its lawful authority, to be punished. 258 U.S. at 189-190, 42 S.Ct. at 280-281, 66 L.Ed. at 559.
I see no essential distinction between an injunction generally and the sort of alimony and child support decree with which we are here concerned.[1]
Mr. Justice Holmes addressed the question three-quarters of a century ago in United States v. Shipp, 203 U.S. 563, 27 S.Ct. 165, 51 L.Ed. 319 (1906). One Johnson had been convicted of rape and sentenced to death by a state court in Hamilton County, Tennessee. He sought federal habeas corpus review of his conviction and sentence. The lower federal court denied relief. Johnson appealed to the Supreme Court which, pending the proceedings, had enjoined the respondent, the sheriff of Hamilton County, from carrying out the execution. The sheriff and others ignored the order and Johnson was hanged. They were subsequently charged with criminal contempt and attempted to defend on the theory that the federal courts had no jurisdiction over Johnson's habeas corpus allegations in the first place, hence violation of the of the stay order was not contempt. Justice Holmes disposed of the argument with the following language:
But even if the circuit court had no jurisdiction to entertain Johnson's petition and if this court had no jurisdiction of the appeal, this court, and this court alone, could decide that such was the law. It and it alone necessarily had jurisdiction to decide whether the case was properly before it. On that question, at least, it was its duty to permit argument, and to *1349 take the time required for such consideration as it might need. See Mansfield, C. & L.M.R. Co. v. Swan, 111 U.S. 379, 387, 28 L.Ed. 462, 465, 4 Sup.Ct.Rep. 510 [514]. Until its judgment declining jurisdiction should be announced, it had authority, from the necessity of the case, to make orders to preserve the existing conditions and the subject of the petition, just as the state court was bound to refrain from further proceedings until the same time. Rev.Stat. § 766; act of March 3, 1893, chap. 226, 27 Stat. at L. 751, U.S. Comp. Stat. 1901, p. 597. The fact that the petitioner was entitled to argue his case shows what needs no proof, that the law contemplates the possibility of a decision either way, and therefore must provide for it. 203 U.S. at 573, 27 S.Ct. at 166, 51 L.Ed. at 323.
Shipp concerned a prohibitory injunction. I see no reason why a different approach should be taken where the decree is mandatory  an order to pay alimony and child support. It must be obeyed so long as it is in effect. An adjudication of contempt, pending appeal, is in no way rendered erroneous or unlawful if the underlying decree is for some reason later vacated.

III.
Here it is necessary that we distinguish carefully between civil contempt and criminal contempt. As this Court has observed, proceedings for contempt fall into two classes:
"(1) Those prosecuted to preserve the power and vindicate the dignity of the court, and to punish for disobedience of its orders; and
(2) Those instituted to preserve and enforce the rights of private parties to suits and to compel obedience to orders and decrees made to enforce the rights and to administer the remedies to which the court has found them to be entitled. 13 C.J. 57." Hanna v. State ex rel. Rice, 169 Miss. 314, 324-325, 153 So. 371, 374 (1934); Ramsay v. Ramsay, 125 Miss. 715, 716, 88 So. 280, 281 (1921).
The first class of proceedings is quasi-criminal; "the punishment is for a past offense and, when imposed must be suffered in the absence of executive clemency." Ramsay v. Ramsay, supra, 125 Miss. at 716, 88 So. at 281. The second class of proceedings is civil in nature, and the person held in contempt can discharge himself by doing what he previously refused to do. 125 Miss. at 716, 88 So. at 281. It should follow that, upon reversal of the underlying decree the civil contempt order is meant to enforce, each has, in essence, spent its force.
When I say that the decree and contempt order have spent their force, I in no way imply that there was any error or irregularity in the entry of the contempt order in the first place. Nor do I suggest that, pending appeal, courts must tolerate Gadson-style self-help. When faced with a decree of a court of competent jurisdiction, a decree with which he is unhappy, a litigant, absent supersedeas, cannot take it upon himself in pending appeal to withhold compliance or performance with impunity.
If a party has notice of the terms or conditions of a decree, and if he deliberately violates same, he is liable to prosecution for criminal contempt, even though the decree may later be vacated.[2] He may be held in civil contempt so long as the decree is in effect. His remedies, if he is aggrieved, include application to the court issuing the injunctive decree for dissolution or modification and failing that and pending appeal, application for supersedeas or other order for stay. His remedies do not include contumacy. [See e.g. Martin v. Martin, 254 So.2d 530, 532 (1971).]
In Ladner v. Ladner, 206 So.2d 620 (Miss. 1968), this Court upheld a criminal contempt order penalizing Mr. Ladner for his *1350 failure to obey an order of Chancery Court granting custody of his children to their mother. This Court correctly affirmed the contempt finding even though the decree on which it was based had not yet been heard on appeal. 206 So.2d at 622.
In my view, Nathaniel Gadson has been at least as contumacious of the orders of the Chancery Court as Mr. Ladner. If the chancellor had chosen to charge Mr. Gadson with criminal contempt, then absent a good defense, he would be just as vulnerable.[3]

IV.
To those general principles there is in this state an exception heretofore recognized. Where the court issuing the decree is without jurisdiction over the subject matter or the parties, the court has no power to hold a party in civil contempt. Ex Parte Wimberly, 57 Miss. 437, 444 (1879). In Wimberly, this court was careful to limit the breadth of this exception:
It will not avail the offender that the order was improvidently made upon insufficient grounds, and would be reversed by a higher tribunal; nor that the court issuing it was not justified in making the particular order that was disobeyed ... When we say that a person may safely disobey the commands of a court that is without jurisdiction to issue them, we mean either that it has failed to give, or that it is incapable of giving, legal notice to the person whose rights are to be affected. 57 Miss. at 444-445. See also, Griffith, Mississippi Chancery Practice § 668 (2d ed. 1950)
This means, however, that a party held in civil contempt by a court lacking subject matter jurisdiction is entitled to discharge once that lack of subject matter jurisdiction has been authoritatively determined. Similarly, a party held in civil contempt by a court to whose in personam jurisdiction the party has not been subjected is entitled to release once that lack of in personam jurisdiction has been finally determined. If a party has been jailed under either of these circumstances, he is entitled to immediate release upon final adjudication of the jurisdictional issue. But this in no way suggests any illegality in the original adjudication of contempt nor the remanding of respondent to the custody of the local sheriff pending his purging himself of his contempt.
The cases relied upon by the majority are civil contempt cases in which the lower courts had failed to give legal notice to the parties whose rights were to be affected by the decree. Sinquefield v. Valentine, 160 Miss. 61, 63, 133 So. 210, 210 (1931); McKinney v. McKinney, 374 So.2d 230, 231 (1979). Since the lower courts did not have in personam jurisdiction at the time the violated decrees were issued, their civil contempt orders had to fall. Both Sinquefield and McKinney are clearly within the exception recognized by this Court in Wimberly.
However, in this case, when the final decree of September 17, 1981, was issued, Nathaniel Gadson was indisputably subject to the in personam jurisdiction of the court. He had been served with process and he had filed his answer and cross-bill. Unquestionably, the decree of September 17, 1981, requiring Mr. Gadson to pay child support was well within the subject matter jurisdiction of the court.
In this respect, the contempt order issued against Gadson is distinguishable from those issued in Sinquefield and McKinney. A blurring of this distinction threatens the foundation of a court's power to ensure that its orders will be obeyed.
Cox v. Cox, 279 So.2d 615 (Miss. 1973), stands for the proposition advanced here. In Cox this Court was faced with an issue nearly identical to the one presented here. Mr. Cox had been held in civil contempt of court for violating a decree ordering him to pay separate support to his wife. 279 So.2d *1351 at 616. After the separate support decree had been reversed, Cox appealed the order holding him in civil contempt. This Court ordered Mr. Cox discharged on the following grounds:
The imprisonment of appellant was to continue only so long as he failed to discharge the separate support obligations imposed in the original decree. Cox, having been relieved of the obligation to pay, is entitled to immediate release. In a case where a party has contumaciously failed to comply with directions contained in a personal decree, has been adjudged guilty of criminal contempt and, as punishment therefore, has been sentenced to pay a fine or to be imprisoned, subsequent reversal of the original decree would not, of itself, absolve or relieve the contemnor of the sentence, and nothing herein is to be construed as so indicating. 279 So.2d at 615.
Cox is limited to proceedings holding a person in civil contempt. A recognition of the difference between civil and criminal contempt is critical to an understanding of the scope of the authority of Cox and its underlying rationale.

V.
In summary, I would affirm the order of the chancery court of Harrison County adjudging Nathaniel Gadson to be in contempt of court. That order was correct and lawful when entered and it remained so until March 16, 1983, the date this Court vacated the underlying decree.[4] Now that this has occurred and that petitions for rehearing have been denied, the contempt order has spent its force. I concur that Nathaniel Gadson should now be discharged.
HAWKINS and PRATHER, JJ., join this opinion.
NOTES
[1] We note that appellant introduced evidence on the contempt proceeding which indicated his inability to pay sums ordered in the decree.
[1] An analogy to the criminal process may be instructive. If one be found guilty of a felony, and desires to take an appeal to this Court, he is, absent supersedeas or release on bail, taken into custody and detained of his liberty pending appeal. If, pending appeal, he escapes and is later prosecuted for escape, it is no defense that the sentence under which he was originally committed has been reversed. Jones v. State, 158 Miss. 366, 370, 130 So. 506, 507 (1930).
[2] I would emphasize that what is said above ought apply even where the injunctive decree was issued without notice to the party enjoined. Under extreme circumstances the courts of this state have the authority to issue injunctions and restraining orders without notice. Rule 65(b), Miss.R.Civ.P.; Ashcot, Inc. v. Texas Eastern Transmission Corp., 241 Miss. 392, 399, 129 So.2d 405, 408 (1961). Where such an injunction is issued, be it mandatory or prohibitory in nature, it simply must be obeyed unless and until modified or dissolved.
[3] In Ladner, the court delineated the proper inquiry in a proceeding for criminal contempt:

In contempt proceedings to determine whether or not a party has deliberately and intentionally violated an order of the trial court, the inquiry is limited to the issues as to whether or not the order was violated, whether or not it was possible to carry out the order of the court, and if it was possible, whether or not such violation was an intentional and willful refusal to abide by the order of the court. 206 So.2d at 623.
[4] Of course, nothing in the majority opinion vacating the permanent decree compromises the power of the Chancery Court via contempt proceedings or otherwise to enforce the prior temporary decree, which by its wording, is to remain in effect until a valid permanent decree has been issued.