483 So.2d 371 (1986)
Henry J. COOK, III
v.
STATE of Mississippi.
No. 55292.
Supreme Court of Mississippi.
February 12, 1986.
*372 James G. Tucker, III, Bay St. Louis, for appellant.
Tom Wright Teel, Walter W. Teel, Sekul, Hornsby, Wallace & Teel, Biloxi, for appellee.
Before WALKER, P.J., and HAWKINS and ROBERTSON, JJ.
ROBERTSON, Justice, for the court:

I.
This appeal arises from a charge of indirect or constructive criminal contempt leveled against a Gulf Coast lawyer. In the court below the accused was found to have counseled his client to violate a child custody decree by pretermitting some of her ex-husband's visitation rights. For reasons explained below, we reverse and render.
An important feature of the proceedings below involved the chancellor's occupying dual and conflicting roles of prosecutor and judge. For reasons explained below, we regard that the chancellor's prosecutorial actions, no doubt undertaken in complete good faith, were such that he became disqualified to adjudge the accused's guilt or innocence.

II.

A.
Annelle Walker and Robert D. Walker were divorced in November of 1977. The only child born of the marriage was Wendy Lynn Walker, a female, then age six but by *373 now fifteen years old. Permanent custody of this child was vested in Annelle. After modification in 1978, Robert was granted visitation rights which included two 48 hour weekend custody periods each month. The parties appear to have operated under this custody arrangement without inordinate difficulty for some four or five years.
In September of 1982, Annelle became aware of certain information through her then eleven year old daughter's psychologist, which, in Annelle's judgment, justified a change of custody to eliminate any overnight or weekend visitation with Robert. To effect this goal Annelle sought the services of Henry J. Cook III, an attorney maintaining his office in Bay St. Louis, Mississippi. Cook was the Defendant below and is the Appellant here. Cook prepared and, on behalf of Annelle, filed in the Chancery Court of Hancock County, Mississippi, a motion to modify the prior custody decree. He sought to have an early hearing set in the matter, but the earliest hearing date available was October 26, 1982.
On September 29, 1982, Annelle acquired new information, which in her view created an emergency situation.[1] She called Cook and advised that she was not going to permit the next overnight visitation, which was scheduled to begin on October 1, 1982. She inquired of Cook concerning the possible consequences of such action. Cook, of course, advised her that she ran the risk of being held in contempt of court. He further urged that she inform Robert of her decision as quickly as possible and attempt to negotiate some alternative form of visitation.
On that first weekend in October, Robert's scheduled visitation was denied without apparent incident. Because another scheduled weekend visitation remained prior to the October 26 hearing date, Cook filed on October 4, 1982, an application for a preliminary injunction, see Rule 65(a), Miss.R.Civ.P., to halt that visitation. He was advised by the court administrator, however, that this application likewise could not be heard until October 26, 1982, the same date as the scheduled hearing on the merits.
Thereafter, at the request of counsel for Robert D. Walker, the merits hearing was continued first until November 3, 1982, then until December 1, 1982, and finally until February 24, 1983. During this time Mr. Cook remained in communication with defense counsel.
By the end of November of 1982, Annelle had denied Robert four weekend visitations. Concerned at the continued postponement of the hearing on her motion to modify, she consulted with Cook and, with his advice and counsel, wrote the following letter, which is the centerpiece of this contempt proceeding:
Annelle Walker 107 Hickory Lane Bay St. Louis, MS November 30, 1982
Robert Walker 514 Meadow Lane Waveland, MS 39576
Dear Robert:
Please do not come and expect to pick up Wendy this coming Friday (December 3, 1982) unless you wish to visit her here or at some neutral, supervised location.
Please understand that I am not denying you the right to see her, but am only attempting to protect her and I do feel that I can no longer allow her to be subjected to the environment in which you keep her. I do not know why, but only that she expresses a great deal of fear whenever it is suggested that she might have to visit with you again.
Please further understand that I do not act out of malice, contempt or other disregard for you or the existing court order, but I cannot, in good conscience, stand by and allow Wendy to be abused and subjected to the type of environment you have provided for her in the past.

*374 If you wish to visit with Wendy, here or in another supervised location, please notify me of such, either directly or through your attorney.
/s/ Annelle Walker
Thereafter, it appears that Robert Walker was denied visitation on only one occasion  the weekend of December 17, 1982.

B.
On February 28, 1983, the instant criminal contempt proceedings were commenced when Hon. John S. Morris, Chancellor, Division 3, Eighth Chancery Court District, filed an affidavit charging Cook with "contumacious contempt toward this court and its orders" for his role in the denial of Robert Walker's visitation rights. The matter was called for hearing before Chancellor Morris on March 3, 1983, at the conclusion of which Cook was found in contempt and fined an aggregate of $500  one hundred dollars for each of the five visitations Robert Walker was denied.[2] Cook has appealed to this Court.

III.

A.
A criminal contempt is conduct that is directed against the dignity and authority of the court, or a judge acting judicially. It arises from an act obstructing the administration of justice which tends to bring the court into disrepute or disrespect. State v. Wingo, 221 Miss. 542, 73 So.2d 107 (1954); see also Gadson v. Gadson, 434 So.2d 1345, 1349 (1983). The essence of the offense is that the defendant wilfully, maliciously and contumaciously refused to comply with a decree of the court. Langford v. Langford, 253 Miss. 483, 485, 176 So.2d 266, 267 (1965).
A few of the basics need to be stated. We proceed ab initio. It is our responsibility to determine whether on this record Cook is guilty of contempt. Prestwood v. Hambrick, 308 So.2d 82, 84 (Miss. 1975); Paxton v. Paxton, 222 So.2d 834 (Miss. 1969). We are not bound by the rule ordinarily applicable  that we have no authority to reverse except the chancellor be found manifestly in error. Bucklew v. State, 209 So.2d 916, 918 (Miss. 1968); Ballew v. Case, 232 Miss. 183, 98 So.2d 451, 453 (1957); cf. Johnson v. State, 233 So.2d 116, 119 (Miss. 1970).
As in all criminal matters, the accused enjoys the presumption of innocence. Langford v. Langford, 253 Miss. 483, 485, 176 So.2d 266, 267 (1965). The State has the burden of proving each element of a criminal contempt beyond a reasonable doubt. Miss. Code Ann. § 11-51-11(4) (Supp. 1985); Coleman v. State, 482 So.2d 221 (Miss. 1986); In Interest of Holmes, 355 So.2d 677, 679 (Miss. 1978); Prestwood v. Hambrick, 308 So.2d 82, 84 (Miss. 1975); Jenkins v. State, 242 Miss. 627, 136 So.2d 205, 208 (1962). His trial must conform to the requirements of due process. In Re Murchison, 349 U.S. 133, 75 S.Ct. 623, 99 L.Ed. 942 (1955). In Interest of I.G., 467 So.2d 920, 923 (Miss. 1985); Grace v. State, 108 Miss. 767, 67 So. 212 (1915).

B.
There was some hearsay testimony in Annelle's contempt hearing to the effect that Annelle had denied Robert visitation on the advice of counsel.[3] That testimony  then unrebutted  was what led Chancellor Morris to file the criminal contempt charges against Cook. At the instant hearing Cook credibly explained that there was no occasion for rebuttal then because Annelle's contempt, not Cook's, was the matter *375 at issue. Indeed, Cook had no knowledge that anyone was considering charging him with contempt.
Cook testified that he advised Annelle that she should comply with the custody decree until it was modified and that she faced a possible contempt citation if she did not. He assisted in drafting the November 30 letter to show that Annelle was acting in good faith, that she had no contumacious attitude toward the court and that she wished to negotiate with Robert a mutually acceptable modification of custody and visitation.
At the hearing below Annelle testified unequivocally that the decision to curtail Robert's visitation rights was hers, that Cook had advised her of the consequences, but she nevertheless continued on her planned course of action.
In this factual setting Cook is simply not guilty of criminal contempt. Not only does the State's proof not reach beyond-a-reasonable-doubt dignity, if it did the acts charged do not constitute criminal contempt.[4] Not every deviation from the directives of a court order is criminal contempt, even though knowingly done or counseled. In a not unrelated context we have refused to label a domestic relations movant a person of unclean hands, where, after filing a petition for modification and resubjecting himself to the jurisdiction of the court, the movant unilaterally reduced his alimony payments, subject ultimately to such action as the court may take. McHann v. McHann, 383 So.2d 823, 826 (Miss. 1980); Lee v. Lee, 182 Miss. 684, 688-89, 181 So. 912, 913 (1938); Schlom v. Schlom, 149 Miss. 111, 115-16, 115 So. 197, 198 (1928); see also Langford v. Langford, 253 Miss. 483, 485, 176 So.2d 266, 267 (1965).
Even where the court ultimately denies the relief movant thought she was entitled to, her having petitioned the court is an indicia of good faith and may often, as here, negate contumacy. Here Annelle and Cook, her attorney, petitioned the court for relief, only to confront a congested court calendar and the legitimate trial preparation needs and scheduling conflicts of counsel opposite, as a result of which an immediate hearing could not be had. Under such circumstances the court should be slow to impose the judgment of criminal contempt on those who in good faith seek to fend for themselves while waiting for the wheels of justice to begin to grind. Life is not like a telephone that can be put on hold until the court is ready to talk.

C.
There is another consideration which compels our reversal of the judgment below. Cook has been found guilty of criminal contempt for his role in aiding and abetting Annelle Walker in denying Robert Walker's visitation rights. Much of this stems from the November 30 letter. As the record before us suggests, Annelle Walker was also found in contempt "at another time in another proceeding". That contempt decree was also appealed to this Court and on August 8, 1984, in an unpublished opinion [See Rule 43, Miss.Sup.Ct. Rules], we reversed and rendered. Walker v. Walker, 453 So.2d 1030 (Miss. 1984). Because it greatly informs our disposition of the case at bar, we quote the pertinent language from that opinion:
Regarding the contempt of court decree and fine therefor against Appellant [Annelle Walker], we find that this part of the decree was against the weight of the evidence. Appellant fully abided by the decree for a number of years. Appellee [Robert D. Walker] did not take advantage of all his visitations, stating that he worked "worldwide". The evidence shows that he could not have possibly missed over eight night visitations after they were stopped by Appellant. The record is clear that he missed more *376 than this because of his own actions. We are, therefore, forced to reverse and render the part of the decree holding the Appellant guilty of contumacious contempt of court. Her sentence of thirty (30) days in jail and $800 fine are set aside. We hold that she was not in contempt of court.
In sum, the evidence is simply not sufficient to show beyond a reasonable doubt that Cook maliciously and contumaciously intended to defy the authority and dignity of the court. Miss. Code Ann. § 11-51-11(4) (Supp. 1985); Prestwood v. Hambrick, 308 So.2d 82, 84-85 (Miss. 1975); Langford v. Langford, 253 Miss. 483, 485, 176 So.2d 266, 267 (1965).

IV.
There is another feature of this proceeding which, in view of the fact that this is not a matter of "direct contempt", is highly irregular. Chancellor Morris acted as both prosecutor and judge. Chancellor Morris did not merely direct the public prosecutor to look into the Cook matter. He initiated this criminal contempt action himself by filing the affidavit of February 28, 1983. When the matter was called for hearing, Chancellor Morris continued to combine the roles of prosecutor and judge and opened the proceedings by addressing counsel for Cook thusly:
The Court will rest on its affidavit as amended concerning that particular affidavit. What do you say, Mr. Tucker?
In short, the prosecution rested without having proved anything. Cook, in effect, was presumed guilty and charged to come forward and prove his innocence. Cook obligingly took the witness stand in his own defense. Thereafter he called his client, Annelle Walker. Here again the chancellor acted as prosecutor when he took it upon himself to cross-examine Annelle the same as would the State's attorney had the matter proceeded regularly. At the conclusion of the hearing, of course, the chancellor found Cook guilty, albeit of a charge somewhat lesser than that stated in the affidavit. Such a proceeding falls far short of minimum due process requirements. In Re Murchison, 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed.2d 942 (1955).
Cases of direct contempt, where a personal attack has been made on the court necessitating an instantaneous response, may be dealt with by the judge offended. In other criminal contempt cases, particularly those in which the allegedly contemptuous actions were committed outside the presence of the court and where the trial judge has substantial personal involvement in the prosecution, the accused contemnor must be tried by another judge. Mayberry v. Pennsylvania, 400 U.S. 455, 465-66, 91 S.Ct. 499, 504-05, 27 L.Ed.2d 532, 540 (1971); In Re Interest of Holmes, 355 So.2d 677, 678 fn. 2 (Miss. 1978).
There is a potential for bias or the appearance of such in every matter of criminal contempt. The judge is judging conduct said to challenge his authority or himself personally, frequently both. See Bloom v. Illinois, 391 U.S. 194, 202, 88 S.Ct. 1477, 1482, 20 L.Ed.2d 522, 529 (1968). Where the judge acts as prosecutor and judge, the only checks against potential bias are his own capacity for objectivity in such matters and painstaking appellate review. Hence the roles of prosecutor and judge should, as much as is reasonably practicable, be kept separate in constructive criminal contempt proceedings.[5] Where the judge whose court or order is offended has substantial personal involvement in the bringing and prosecution of the criminal contempt proceedings, he may not adjudge the defendant's guilt.[6]Compare
*377 Bryant v. State, 363 So.2d 1141, 1144-45 (Fla.App. 1978).
REVERSED AND RENDERED
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, DAN M. LEE, PRATHER, SULLIVAN and ANDERSON, JJ., concur.

APPENDIX

ANNELLE WALKER

v.

ROBERT D. WALKER

No. 54987.

Supreme Court of Mississippi.
Before WALKER, P.J., and BOWLING and HAWKINS, JJ.
BOWLING, Justice, for the Court:
This case is another one of those unfortunate scraps between ex-spouses that results only in harm to children involved.
We note that the divorce of the parties was granted on November 3, 1977, by Chancellor Alexander of Hancock County. He issued his order granting custody of the young daughter of the parties to appellant, Annelle Walker with the right of visitation to appellee, Robert D. Walker but only on strict conditions where certain adults would be present.
Appellee filed on April 14, 1978, his petition to modify the first decree. Another chancellor heard this petition and granted modification. It is unclear in this record how that could have been done in a relatively short time after the original decree.
Appellee, by order of September 28, 1978, was granted custody of the child for two weekends each month and other visitations. This continued until September 1982, when appellant filed her petition to modify, alleging certain acts of appellee that were detrimental to the well being of the child. A few days prior thereto, she discontinued allowing the child to stay overnight with appellee.
After hearing on the petition, the chancellor reinstated overnight custody to appellee. He further found appellant in contempt of court for stopping the overnight visitations, pending the court hearing.
It would serve no useful purpose to relate in detail the history and evidence regarding this matter. The daughter is 12 or 13 years of age by this time. If she has not been permanently harmed by her parents by now, the chances are she will not be so in the near future and is now in a position to make a good life for herself.
It is our opinion that this mess should be remanded to the chancery court to re-evaluate the situation at this time in the event the parents do not have sense enough to get together and do what is best for their daughter. We do suggest that another chancellor with a fresh outlook hear the matter, if it should require going to that extent.
Regarding the contempt of court decree and fine therefor against appellant, we find that this part of the decree was against the weight of the evidence. Appellant fully abided by the decree for a number of years. Appellee did not take advantage of all his visitations, stating that he worked "world wide." The evidence shows that he could not have possibly missed over eight night visitations after they were stopped by appellant. The record is clear that he missed more than this because of his own actions. We are, therefore, forced to reverse and render the part of the decree holding appellant guilty of contumacious contempt of court. Her sentence of thirty days in jail and $800 fine are set aside. We hold that she was not in contempt of court.
The cause is reversed and remanded as to that part of the decree regarding the custody of the child. After remand, a chancellor, if requested by either party, is directed to have an up-to-date hearing on what is to the best interest of the child at that time in regard to her custody and visitations by both parents. The part of the decree holding the appellant guilty of *378 contumacious contempt of court is reversed and rendered.
REVERSED IN PART, RENDERED IN PART AND REMANDED
WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, DAN M. LEE, PRATHER, ROBERTSON and SULLIVAN, JJ., concur.
PATTERSON, C.J., not participating.
NOTES
[1] Annelle's complaint centered around Robert's having female companions staying overnight on weekends when Wendy was with him. In retrospect it seems clear that no genuine emergency situation was presented.
[2] Four of those denied weekend visitations  October 1, 1982, October 15, 1982, November 5, 1982 and November 19, 1982  occurred prior to the writing of the pivotal November 30, 1982 letter.
[3] The contempt proceedings against Annelle, arising out of the same facts and circumstances as the case at bar, are within the actual and judicial knowledge of this Court. Walker v. Walker, No. 54,987 on this Court's docket; see memorandum of unpublished decision at 453 So.2d at 1030. Because of its importance to the disposition of the instant appeal, the unpublished opinion in the Walker case is attached hereto as an appendix.
[4] We have been invited by counsel to vindicate Cook's conduct on the authority of his First Amendment rights to counsel with and advocate the cause of his client. See Thornton v. Breland, 441 So.2d 1348 (Miss. 1983). As real and important as such rights are, resort to them is unnecessary to today's decision.
[5] For a useful and instructive contrast, see Brannon v. State, 202 Miss. 571, 584, 29 So.2d 916 (1947); Ex Parte Redmond, 156 Miss. 582, 126 So. 485, 488 (1930).
[6] We do not wish here to be understood as saying that any personal involvement in initiating criminal contempt proceedings disqualifies a judge. Mayberry v. Pennsylvania, 400 U.S. 455, 465, 91 S.Ct. 499, 504, 27 L.Ed.2d 532, 540 (1971); Grace v. State, 108 Miss. 767, 775, 67 So. 212, 213 (1915). Identification of the precise line of demarcation will have to await future cases.