538 So.2d 1196 (1989)
HARRISON COUNTY SCHOOL BOARD
v.
Cheryl MORREALE.
No. 58200.
Supreme Court of Mississippi.
February 1, 1989.
*1197 Albert Necaise, Gulfport, for appellant.
John C. Ellis, Gulfport, for appellee.
Before DAN M. LEE, P.J., and PRATHER and PITTMAN, JJ.
DAN M. LEE, Presiding Justice, for the Court:
Cheryl Morreale, a teacher's aide employed by the Harrison County School Board, was discharged from her job following a pre-termination hearing before the School Board. On appeal to the Chancery Court of Harrison County, the chancellor reversed the Board's decision on the ground that Mrs. Morreale had been denied due process, and remanded the case for a hearing before an impartial hearing officer. From that judgment, the Harrison County School Board appeals. We reverse the chancellor's judgment and reinstate the decision of the Harrison County School Board.

FACTS
When this cause of action arose, the appellee Cheryl Morreale was employed by the Harrison County School Board as a teacher's aide at Bel-Aire Elementary School. Mrs. Morreale's son, Larry Morreale, was a student at the North Gulfport Seventh and Eighth Grade School. On or about January 22, 1986, Larry was suspended from school for five days as a result of a fighting incident on a school bus. On January 22, 1986, two other students at North Gulfport School were involved in a fighting incident in the gym. This incident *1198 was totally unrelated to the Morreale incident. The two students involved in the gym incident were sent to the vice-principal's office with discipline notices written up by Coach Larry Allen Strohm. These discipline notices, which were standard forms, each consisted of three copies. As was common practice, the vice-principal noted on each of the forms the action taken  both of these students were given a warning  and the copies were distributed as follows: one copy to the student to be taken home and signed by his parent and returned; one to the teacher issuing the discipline notice; and one to the office, to be kept in the student's file.
On learning that Larry Morreale had been suspended from school, while the two boys involved in the gym altercation had only been given a warning, Coach Strohm, who knew Cheryl Morreale on a casual basis, decided to intervene. In violation of school regulations, Strohm went to the school office and photocopied his copy of each of the discipline forms involving the two gym students. Strohm then gave this confidential information either directly to Cheryl Morreale or to Larry Morreale to give to his mother. Strohm knew that his action was contrary both to the school rules and to federal regulations prohibiting the disclosure of personally identifiable student records except with the written consent of the student's parent or guardian.
On January 27, 1986, Mrs. Morreale attended a meeting of the Harrison County School Board in order to object to her son's suspension and to protest what she claimed was inconsistency in the school's discipline policy. In support of her allegation that the school was inconsistent in applying discipline, Morreale distributed to the board members and to several other persons present at the meeting, photocopies of the "teacher's copy" of the discipline forms issued to the two students involved in the gym incident. Both of the students were cited by name in the documents distributed by Morreale. The unauthorized release of personally identifiable records such as these subjects a school to the potential loss of federal funding. See 20 U.S.C. 1232(g), (b)(1) (Supp. 1986). When asked where she had obtained these confidential documents, Morreale stated that she had obtained them from "the students." Coach Strohm's name was not mentioned.
Following the January 27th Board meeting, the principal of North Gulfport School began to investigate this breach of confidentiality. In the course of his investigation, he interviewed Coach Strohm, who admitted that he had unlawfully copied the documents and given them to Mrs. Morreale.
After learning that Mrs. Morreale had obtained the discipline forms through unlawful means and then had lied to the Board concerning the means by which she had obtained them, Harrison County School Superintendent Henry Arledge contacted Morreale's principal, Christine Skinner, at Bel-Aire Elementary School, and requested Morreale's file. Morreale's file revealed that she had been called in by Skinner for a conference on December 4, 1985, concerning misconduct with the school's two physical education coaches. On December 3, 1985, Morreale had called Skinner at home to ask if she could bring mistletoe to school the following day to play a joke on the coaches. Skinner told Morreale that she could not bring the mistletoe to school. The following day, both physical education coaches went to Skinner to complain that Morreale had placed mistletoe over the door to the gym and had tried to kiss them as they came in. After the conference with Skinner, Morreale signed a form which acknowledged that a conference had been held and which reflected that the topics discussed were "conduct with PE coaches" and "insubordination."
At the February 24, 1986, meeting of the Harrison County School Board, Superintendent Arledge recommended that Morreale be suspended from her job as teacher's aide. The Board voted to accept this recommendation. The reason given for Mrs. Morreale's suspension was: "For making false statements to the Harrison County School Board in their meeting held on January 27, 1986, and for violation of the Family Rights and Privacy Act." John Ellis, an attorney representing Mrs. Morreale at the *1199 February meeting, requested that the Board conduct a hearing for Mrs. Morreale at the School Board meeting to be held on March 3, 1986. The Board agreed to grant this request. On February 25, 1986, Superintendent Arledge wrote Mrs. Morreale advising her of her suspension and also of the hearing to be held on March 3rd. The letter stated in part:
This suspension is the result of your conduct concerning your giving false statements to the Harrison County School Board at their January 27, 1986, meeting wherein you presented the School Board with copies of two discipline forms concerning two children not related to you nor under your jurisdiction as a teacher aide... .
In addition, you have been cited for failure to follow the instructions of your principal, Ms. Christine Skinner, at the Bel-Aire Elementary School on December 4, 1985, wherein you brought certain items to school after being instructed not to do so. (Insubordination)... .
The letter also informed Morreale that she was entitled to be represented at the hearing by counsel and to put on any witnesses and evidence she desired to present.
At the board meeting on March 3, 1986, Morreale's counsel requested a closed hearing and also requested that the board members recuse themselves and that a hearing officer be appointed. These requests were denied, and an open hearing was conducted before the Board. Various witnesses testified that at the January 27th board meeting, Morreale had distributed copies of the discipline forms to the Superintendent, the board members and the Board's attorney. All witnesses to the incident (except Morreale) were certain that Morreale stated that she had received the forms directly from "the students." Morreale's counsel argued that the phrase "the students" could have referred to Morreale's son, and in that case Morreale would not have been lying when she told the Board she got the forms from "the students." The North Gulfport principal, however, testified that he was certain that Morreale was referring to the two students in the gym incident and that she was thus trying to mislead the Board. North Gulfport's vice-principal testified that Morreale had spoken with him after her presentation to the Board, and that she had expressed concern that the two gym students (whom she then mentioned by name) might get into trouble for giving her copies of their discipline forms. The parents of the two gym students testified that Morreale had distributed the discipline forms without their consent.
Morreale testified that she did not knowingly lie to the Board. She apologized for any unclearness in her speech which the Board might have misconstrued. She denied having stated that she received the discipline forms from "the students." She also denied the entire conversation she had had with North Gulfport's vice-principal concerning whether the two gym students might get into trouble. Finally, she denied that she had a telephone conversation with her own principal the night before the mistletoe incident. At the close of all the testimony, the Board voted unanimously to terminate Morreale.
Mrs. Morreale appealed the Board's decision to the Chancery Court of Harrison County. The chancellor reversed the School Board's decision, finding that the School Board's refusal to recuse itself, as requested by Morreale, violated Morreale's constitutional right to due process. The chancellor remanded the case for a rehearing before an impartial hearing officer. From the chancellor's judgment, the Harrison County School Board has perfected this appeal, and assigns two errors.

I. THE LOWER COURT ERRED IN HOLDING THAT MRS. MORREALE WAS ENTITLED TO A DUE-PROCESS PRE-TERMINATION HEARING.
The chancellor held that "[t]he School Board cannot now argue that Mrs. Morreale was not entitled to a pre-termination hearing. Once the School Board provides such a hearing, Mrs. Morreale must also be provided with all of the requisite due process."
The School Board argues first that Mrs. Morreale was not entitled to a pre-termination hearing, and that the fact that the *1200 School Board in its discretion granted her such a hearing conferred no additional rights to her. Consequently, the Board contends, she cannot complain that she was deprived of her constitutional rights at the hearing, when she was not entitled to a hearing at all.

DISCUSSION
The Legislature has specifically provided that before a "teacher" can be dismissed or suspended, he must be notified of the charges against him and must be advised that he is entitled to a public hearing. Miss. Code Ann. § 37-9-59 (Supp. 1985).[1] The term "teacher" by definition, however, excludes any school district employee not required by law to have a teacher's certificate from the State Board of Education. See Miss. Code Ann. §§ 37-9-1 (1972) and 37-19-1(b) (Supp. 1985). As a teacher's aide, Mrs. Morreale was not required to have a teacher's certificate. Therefore, she did not meet the statutory definition of a "teacher" and § 37-9-59 did not apply to her.
There is no statutory provision in this state which grants a teacher's aide the right to a hearing before his or her dismissal. Nevertheless, Mrs. Morreale was entitled to procedural due process if her job constituted a property interest. Board of Regents v. Roth, 408 U.S. 564, 576, 92 S.Ct. 2701, 2708, 33 L.Ed.2d 548 (1972). A property interest in one's continued employment exists only when the employee has "a legitimate claim of entitlement to it." Id. at 577, 92 S.Ct. at 2709.
While teachers are hired under contract with the superintendent of schools, non-certificated instructional personnel such as Mrs. Morreale are not under contract. Where there is no express contract of employment, a valid claim of entitlement must be grounded in some other legal source, such as a state statute or local ordinance, or an implied contract. Conley v. Board of Trustees of Grenada County Hospital, 707 F.2d 175, 179 (5th Cir.1983); White v. Mississippi State Oil and Gas Board, 650 F.2d 540, 541 (5th Cir.1981). The Constitution, standing alone, confers no property right in continued employment. Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972); White v. Mississippi State Oil & Gas Board, 650 F.2d 540, 541 (5th Cir.1981). Rather, "the sufficiency of the claim of entitlement must be decided by reference to state law." Bishop v. Wood, 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976).
We find no legislative enactment providing teachers' aides with a valid claim of entitlement to continued employment. (Miss. Code Ann. § 37-9-4 [Supp. 1985] [repealed July 1, 1987] provided for the employment of non-certified personnel, but did not address the termination of such personnel.) Mississippi follows the common law rule that an employee hired for an indefinite term may be discharged at the will of his employer. See Perry v. Sears, Roebuck & Co., 508 So.2d 1086 (Miss. 1987); and Shaw v. Burchfield, 481 So.2d 247 (Miss. 1985). See also Conley v. Board of Trustees of Grenada County Hospital, 707 F.2d 175, 179 (1983).
Since Mrs. Morreale has shown no basis for a valid claim of entitlement to continued employment as a teacher's aide, her termination deprived her of no property interest the taking of which would invoke the due process provisions of the Constitution. We hold, therefore, that the chancellor erred in so holding.

II. EVEN IF MRS. MORREALE WAS ENTITLED TO A HEARING, THE LOWER COURT ERRED IN HOLDING THAT SHE WAS DEPRIVED OF DUE PROCESS IN THE HEARING ACCORDED HER.
The chancellor reversed the School Board's decision on the grounds that the pre-termination hearing on March 3, 1986, did not comport with minimum due process requirements. The chancellor found that *1201 the refusal of the School Board to recuse itself and appoint an impartial hearing officer violated Mrs. Morreale's right to due process, because it put the Board in the position of being both accuser and judge. An almost identical due process issue was presented to the United States Supreme Court in Hortonville Joint School District No. 1 v. Hortonville Education Association, 426 U.S. 482, 96 S.Ct. 2308, 49 L.Ed.2d 1 (1976). In Hortonville the local school board had terminated certain teachers who were participating in an illegal strike, and who refused to return to work after various requests by the district superintendent to do so. The education association sued on behalf of the discharged teachers, alleging that the hearing given the teachers by the board did not comply with due process requirements. The trial court granted the school board's motion for summary judgment on the due process claim. The Wisconsin Supreme Court reversed, holding that the due process clause of the Fourteenth Amendment required that an impartial decision-maker other than the board evaluate the teachers' conduct and the board's response to that conduct. Id. at 486, 96 S.Ct. at 2311. In reversing the Wisconsin Supreme Court, the United States Supreme Court stated the following:
Respondents have failed to demonstrate that the decision to terminate their employment was infected by the sort of bias that we have held to disqualify other decisionmakers as a matter of federal due process. A showing that the board was "involved" in the events preceding this decision, in light of the important interest in leaving with the Board the power given by the state legislature, is not enough to overcome the presumption of honesty and integrity in policymakers with decisionmaking power. (Citation omitted). Accordingly, we hold that the Due Process Clause of the Fourteenth Amendment did not guarantee respondents that the decision to terminate their employment would be made or reviewed by a body other than the School Board.
Id. at 496-97, 96 S.Ct. at 2315-16. Accord Spradlin v. Board of Trustees of Pascagoula Municipal Separate School District, 515 So.2d 893 (Miss. 1987); Dampier v. Lawrence County School District, 344 So.2d 130 (Miss. 1977). ("[A] showing that a board was involved in the events preceding the termination is not enough, absent a showing of either personal animosity, personal stake or financial stake in the decision, to overcome the presumption of honesty and integrity of board members in conducting the hearing and rendering the decision."). In the instant case, Mrs. Morreale made no showing that would overcome the presumption of honesty and integrity on the part of the board members who conducted her hearing.
Mrs. Morreale relies on Cook v. State, 483 So.2d 371 (Miss. 1986), in which this Court reversed and rendered a criminal contempt charge on the ground that the chancellor occupied the dual and conflicting roles of prosecutor and judge. This Court specifically held that "[s]uch a proceeding falls far short of minimum due process requirements... ." Id. at 376. Appellee's reliance on Cook is misplaced. The United States Supreme Court rejected an almost identical argument in Withrow v. Larkin, 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975). The High Court stated:
Appellee relies heavily on In Re Murchison [349 U.S. 133, 75 S.Ct. 623, 99 L.Ed. 942 (1955)], in which a state judge, empowered under state law to sit as a "oneman grand jury" and to compel witnesses to testify before him in secret about possible crimes, charged two such witnesses with criminal contempt, one for perjury and the other for refusing to answer certain questions, and then himself tried and convicted them. This Court found the procedure to be a denial of due process of law not only because the judge in effect became part of the prosecution and assumed an adversary position, but also because as a judge, passing on guilt or innocence, he very likely relied on "his own personal knowledge and impression of what had occurred in the grand jury room," an impression that "could not be tested by adequate cross-examination." [349 U.S. at 138, 75 S.Ct. at 626.]

*1202 Plainly enough, Murchison has not been understood to stand for the broad rule that the members of an administrative agency may not investigate the facts, institute proceedings, and then make the necessary adjudications... . Without a showing to the contrary, state administrators "are assumed to be men of conscience and intellectual discipline, capable of judging a particular controversy fairly on the basis of its own circumstances." United States v. Morgan, 313 U.S. 409, 421 [61 S.Ct. 999, 1004, 85 L.Ed. 1429] (1941).
Id. 421 U.S. at 53, 55, 95 S.Ct. at 1467, 1468.
In Dampier v. Lawrence Co. School District, 344 So.2d 130 (Miss. 1977), the appellant, a librarian who was denied reemployment by the school board, argued that she was deprived of due process in that the same board which declined to renew her contract also conducted her hearing. The appellant claimed that she did not receive a fair and impartial hearing because the school board was both prosecutor and judge. Based on Withrow and Hortonville, this Court held that the appellant was not denied due process. We find that Dampier is dispositive of the present case and that the chancellor erred in holding that Mrs. Morreale's right to due process was violated.
The appellee, in passing, suggests that her First Amendment right of freedom of expression was violated by the Board's action. This is a substantive issue not raised below and not briefed by appellee. Nevertheless, we address the merits. In Spradlin, supra, 515 So.2d at 899, the appellant, who was Director of Federal Programs and Coordinator of the Instructional Material Center for the Pascagoula School District, made misrepresentations to the school board regarding the purchase of several sets of encyclopedias. This Court held that the appellant's misrepresentation to the board was good cause for dismissal. In the instant case, Mrs. Morreale's action in distributing personally identifiable student records without consent of the students' parents constituted a serious violation of both school and federal regulations. Mr. James Shippey, the Harrison County Assistant Superintendent in charge of federal programs, testified at Mrs. Morreale's hearing that on Friday before the January 27, 1986, School Board meeting at which Mrs. Morreale distributed the two discipline forms, she had come to his office. He stated that he instructed her at that time "that she could bring her information to the School Board, and she could not use any information that pertained to other students. And she should confine all of her identification of people to the incident in which her son was involved." (Record at 28-29) In spite of Mr. Shippey's instructions, Mrs. Morreale distributed the forms anyway. Because a violation such as this subjected the school to the potential loss of federal funds, the School Board had a compelling interest in determining from whom Mrs. Morreale had obtained the forms. Her misrepresentation to the Board regarding how she obtained the forms constituted good cause for dismissal, at least as much as did the misrepresentation made in Spradlin. Furthermore, as the United States Supreme Court stated in Connick v. Myers, 461 U.S. 138, 146-47, 103 S.Ct. 1684, 1689-90, 75 L.Ed.2d 708 (1983):
When employee expression cannot be fairly considered as relating to any matter of political, social, or other concern to the community, government officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment. Perhaps the government employer's dismissal of the worker may not be fair, but ordinary dismissals from government service which violate no fixed tenure or applicable statute or regulation are not subject to judicial review even if the reasons for the dismissal are alleged to be mistaken or unreasonable.
Not only was Ms. Morreale not entitled to a pre-termination hearing, she was also not entitled to appeal the final decision of the School Board. Miss. Code Ann. § 37-9-113 (Supp. 1985 and 1988), which provides for appeals to chancery court from a school board's final decision, applies *1203 only to an "employee." For purposes of § 37-9-113, an "employee" is defined as
any teacher, principal, superintendent elected by a board of trustees, and other professional personnel employed by any public school district of this state and required to have a valid certificate issued by the state department of education as a prerequisite of employment.
Miss. Code Ann. § 37-9-103 (Supp. 1985 and 1988). Since Mrs. Morreale, as a teacher's aide, was not required to have a valid certificate from the state department of education, she was not covered under the statutory definition of "employee" and thus was not entitled to judicial review.
Even where an appeal is properly before the chancery court, however, the chancellor is limited in his review of a school board's decision as provided in § 37-9-113(3):
The scope of review of the chancery court in such cases shall be limited to a review of the record made before the school board or hearing officer to determine if the action of the school board is unlawful for the reason that it was:
(a) Not supported by any substantial evidence;
(b) Arbitrary or capricious; or
(c) In violation of some statutory or constitutional right of the employee.
See Hattiesburg Municipal Separate School District v. Gates, 461 So.2d 730, 736 (Miss. 1984). When that standard of review is applied to the facts of the instant case, it is clear that the School Board's decision should not have been disturbed. The School Board's decision was supported by substantial evidence; it was neither arbitrary nor capricious; and it did not violate either a statutory or constitutional right of Mrs. Morreale.
We hold that the chancellor erred in reversing the decision of the School Board and remanding for a new hearing. The judgment of the Chancery Court of the First Judicial District of Harrison County, Mississippi, is therefore reversed, and the decision of the Harrison County School Board terminating Mrs. Morreale is reinstated.
REVERSED AND THE DECISION OF THE HARRISON COUNTY SCHOOL BOARD REINSTATED.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON, PITTMAN and ZUCCARO, JJ., concur.
NOTES
[1] Under this statute, as it existed at the time of Mrs. Morreale's dismissal, the term "teacher" was used. The statute was amended effective July 1, 1987, however, and now uses the term "certificated employee" rather than "teacher."