545 So.2d 725 (1989)
Howard R. SMITH
v.
Beverly Ann SMITH.
No. 58695.
Supreme Court of Mississippi.
May 24, 1989.
Jerry R. Wallace, Danny L. Crotwell, and Montgomery, Smith-Vaniz & McGraw, Canton, for appellant.
John W. Christopher and George Dewey Hembree, III, Canton, for appellee.
Before DAN M. LEE, P.J., and SULLIVAN and PITTMAN, JJ.
PITTMAN, Justice, for the Court:
Howard R. Smith and Beverly Ann Smith were married on October 17, 1981. They had one child, Bethany Ann. The couple was granted a Judgment of Divorce on January 13, 1987, on the grounds of irreconcilable differences. Incorporated into the Judgment was an Agreement for Child Custody and Maintenance and Settlement of Property Rights. Beverly Smith was granted custody of Bethany. Howard Smith was granted rights of visitation as follows:
a. Husband shall have the child from 6:00 o'clock p.m. on Friday until 4:00 o'clock p.m. on Sunday on the third weekend of each month. Husband shall pick the child up at the residence each weekend in which Husband shall have the *726 child and shall return the child to the residence of Wife by 5:00 o'clock p.m. on the Sunday of such weekend. Husband and Wife agree that neither party will take the minor child into an environment of an immoral nature and that each of them will maintain said child in a sober and healthy environment in the best interest of said child.
On May 1, 1987, Howard Smith filed a Complaint for Contempt against his ex-wife, alleging that she had violated the following terms of the Settlement Agreement: (a) that she would assume responsibility for making the monthly payments on the 1982 Pontiac which she had received as part of the settlement and would further hold Howard Smith harmless from any liability for failure to make such payments; (b) that she would turn over Howard Smith's carpentry tools and saws; (c) and that she would allow reasonable visitation rights as provided for in the Settlement Agreement. The Complaint asked that Mrs. Smith be held in civil contempt until she had purged herself of such contempt by complying with the terms of the Settlement Agreement.
Howard Smith testified that he had attempted to exercise his visitation rights each month since the rendition of the divorce decree. He stated that Beverly Smith had told him that Bethany was seeing a psychologist and that as a result Beverly felt that it was not in the best interests of the child to see her father. Howard Smith also presented evidence concerning the indebtedness of the 1982 Pontiac and the carpentry tools. Smith admitted that even though he had alleged in his sworn pleading of May 1, 1987, that his wife had his carpentry tools, he had in fact gotten all the tools back, with the exception of the chainsaw, before the divorce judgment was rendered. Smith also admitted that he had known that the 1982 Pontiac would be repossessed if some action was not taken, but he refused to help his ex-wife with the payments. Smith acknowledged that he was living with Linda M. Woods from the time of his divorce until March 20, 1987, the date of his marriage to Linda M. Woods. He denied that he intended to take Bethany into this environment, insisting instead that he intended to have their visitation elsewhere. Smith testified that he had been treated for alcoholism on numerous occasions, and that he had failed to make the payments to Baptist Medical Center for the delivery of Bethany per the Settlement Agreement. Because of the alcoholism, Smith had not seen Bethany for eight months prior to the divorce.
Beverly Smith's testimony contradicted Howard's in several areas. According to Beverly, Howard never asked for visitation rights until April. As to the April visitation, Beverly said there had been some attempt to work out the details of the visitation, but nothing had ever been finalized beyond what was in the decree. Finally, when Howard came to pick up Bethany, Beverly refused to let her go. When asked why, Beverly replied:
Because I feel as the mother that has been with the child for a year and he has not bothered to help with the child or anything, that I did not feel like it was the best interest of the child to go off with somebody not knowing where he was going to take her and the only thing he told me was that Brenda would be taking care of her and the circumstances arising around Linda, I did not think it was the best interest when he is the father and not her.
Mrs. Smith admitted that Smith informed her at this time that he and Linda M. Woods were married.
The Chancery Court entered its opinion on June 8, 1987. The court found first that Howard Smith had presented insufficient evidence as to the allegations concerning the chainsaw and the 1982 Pontiac and that those allegations should be dismissed with prejudice. The court also found that Beverly Smith was justified in not allowing Bethany to visit her father while he and Linda Woods were living together, that is, prior to March 20, 1987. The court never explicitly found whether there actually had been any visitation attempts by Howard Smith before April, 1987. The court made no finding as to contempt concerning the April visitation date, when Howard Smith *727 and Linda Woods were married and Beverly Smith had been notified of this fact. The court took into consideration the fact that Howard Smith had seen his daughter only sparingly for one year prior to the May, 1987 hearing. Beverly Smith was awarded $300.00 in attorney's fees, with the costs of the proceedings assessed to Howard Smith.
Howard Smith filed a Motion to Reconsider Opinion. After a hearing the Motion was overruled. A final judgment was entered and the court reiterated its finding that Beverly Smith was not in contempt up to March 20, 1987; it further found that "Beverly Ann Smith is not in contempt of the Court's Order and the Complaint for Contempt filed by Plaintiff should be dismissed."

I.
Findings of fact made by a chancellor may not be set aside or disturbed on appeal unless manifestly wrong; this is so whether the finding relates to evidentiary or ultimate fact questions. Carr v. Carr, 480 So.2d 1120, 1122 (Miss. 1985). With respect to issues of fact where the chancellor made no specific finding, this Court proceeds on the assumption that the chancellor resolved all such fact issues in favor of the appellee, or at least in a manner consistent with the decree. Tedford v. Dempsey, 437 So.2d 410, 417 (Miss. 1983).
It is readily apparent that there was a violation of the Settlement Agreement as it was incorporated into the divorce judgment. Howard Smith attempted, on the third weekend of April, 1987, to exercise his rights of visitation with his daughter as provided in the Settlement Agreement. It is uncontradicted that it was possible for Beverly Smith to obey the court decree, but that she refused to do so. It is also uncontradicted that at this time, Howard Smith had married Linda M. Woods, and that Beverly Smith was apprised of this fact. The question remaining is whether or not Beverly Smith had a legally legitimate defense for her actions. In this case Howard Smith has alleged that his ex-wife was in civil contempt of the Chancery Court's order. Civil contempt is coercive in nature. This type proceeding resembles an injunction, and is instituted by a party in order to force another party to act or cease to act in a particular manner. Jones v. Hargrove, 516 So.2d 1354, 1357 (Miss. 1987).
There are several available defenses to a civil contempt charge. One is that whatever violation there may have been of a decree or order was not willful or deliberate such that the behavior in question may not be labelled as contumacious. Dunaway v. Busbin, 498 So.2d 1218, 1222 (Miss. 1986). Included in this defense may be an honest inability to perform according to the dictates of the order or decree. Prestwood v. Hambrick, 308 So.2d 82, 85 (Miss. 1975). Another available defense is the traditional notion of "clean hands". Vockroth v. Vockroth, 200 So.2d 459, 463 (Miss. 1967). A third defense is that of an inability to obey an order which is vague or not sufficiently specific. 498 So.2d at 1222.
Beverly Smith puts forward variations of all three of these defenses. Mrs. Smith's main defense is that she was acting under a good-faith belief that Howard Smith and Linda Woods had never married, and that when she denied visitation rights to Howard in April, 1987 she was only acting in a manner consistent with the Settlement Agreement. In other words, even though she may have disobeyed the decree of the court, her behavior was not willful and deliberate such that a contempt judgment would be appropriate.
This defense should be viewed against the extremely lenient view this Court and the other courts of this state have taken of contempt proceedings in general. In Walters v. Walters, 383 So.2d 827 (Miss. 1980), the appellee simply refused to make child support payments. The chancery court entered judgment against the appellee for the past-due payments, but refused to find the appellee in contempt. 383 So.2d at 828-829. As this Court stated in affirming the denial of contempt:
Although it was close question whether Walters was in contempt of court, the evidence was somewhat conflicting and *728 we cannot say with certainty that the chancellor abused his discretion in not finding Walters in contempt of court for willfully refusing to make monthly child support payments.
383 So.2d at 829. A similar situation can be seen in Brown v. Gillespie, 465 So.2d 1046 (Miss. 1985), where the appellee was found to be in arrears on his child support payments but not in contempt of court. Even though the appellee gave no reason for his inability or refusal to make the support payments, this Court affirmed the chancery court's finding. 465 So.2d at 1048.
The most closely analogous situation to that in the case at bar is that detailed in a memorandum decision, Walker v. Walker, 453 So.2d 1030 (Miss. 1984) published as an appendix to Cook v. State, 483 So.2d 371 (Miss. 1986). In Walker, Annelle Walker was found to be in contempt of court for not allowing her ex-husband to exercise his visitation rights. According to Cook, which dealt with essentially the same facts, Annelle Walker's complaint was that her ex-husband was having female companions staying overnight on weekends when the child was visiting. 483 So.2d at 373 n. 1. After a futile attempt to negotiate some kind of informal settlement, Annelle Walker denied her ex-husband visitation rights for one weekend. 483 So.2d at 376. The chancery court found Mrs. Walker to be in contempt and sentenced her to 30 days in jail and a fine of $800. This Court reversed and rendered, relying on Mrs. Walker's years of compliance with the decree and Mr. Walker's failure to take advantage of all his visitation opportunities in the past. 483 So.2d at 377.
According to the authorities just cited, it appears the chancery court in this case was not manifestly in error for finding that Beverly Smith was not in contempt before March 20, 1987, or pursuant to the April, 1987 visitation attempt. However, by uncontradicted evidence, Beverly Smith disobeyed the chancery court's order as it applied to the April, 1987 visitation attempt.
This Court can see no benefit in rendering a judgment of contempt against Beverly Smith, even though it would be appropriate under the law, but she must be told that she must either request the court to change its prior decree or comply with the decree; but she must not disobey the decree. It appears that Beverly Smith decided on her own that it was not in her daughter's best interest to allow the April, 1987 visitation. This is the kind of self-help that this Court has on several occasions condemned and does here condemn. Merchants National Bank, Vicksburg v. Stewart, 523 So.2d 961, 965 (Miss. 1988); Gadson v. Gadson, 434 So.2d 1345, 1349 (Miss. 1983) (Robertson, J., specially concurring). If Mrs. Smith had a problem with the terms of the decree or felt that it was no longer in Bethany's best interest that the decree be followed, then she should have petitioned the chancery court for modification of the decree. For this Court to simply affirm without making this point may send the message that disobedience of court orders is allowable as long as one feels that one's reasons are sufficient.
Beverly Smith cannot, without sanction of the Court, decide when or how she will comply with court judgments. Further, Howard Smith is entitled to protection of the chancery court, and he is entitled to have the court's protection and help in enforcing the court's order and this Court will require where necessary a trial court to see that its orders are followed. The trial court was lenient on Beverly Smith, but denied Howard Smith the use of appropriate petitions to exercise his court-granted and -approved rights. Howard Smith too must have a remedy. Beverly Smith must comply with the chancery court's judgment.

II.

IT WAS ERROR FOR THE CHANCELLOR TO AWARD ATTORNEY'S FEES TO THE APPELLEE.
The chancellor awarded Beverly Smith $300.00 in attorney's fees. As far as this Court can tell, there is no evidence in the record concerning attorney's fees. An *729 award of attorney's fees in a contempt case is proper. Stauffer v. Stauffer, 379 So.2d 922, 924 (Miss. 1980).
A chancellor's discretion in making an attorney's fee award is not unlimited. In McKee v. McKee, 418 So.2d 764 (Miss. 1982), this Court enumerated certain factors to be considered in making such an award:
In determining an appropriate amount of attorneys fees, a sum sufficient to secure on competent attorney is the criterion by which we are directed. The fee depends on consideration of, in addition to the relative financial ability of the parties, the skill and standing of the attorney employed, the nature of the case and novelty and difficulty of the questions at issue, as well as the degree of responsibility involved in the management of the cause, the time and labor required, the usual and customary charge in the community, and the preclusion of other employment by the attorney due to the acceptance of the case.
418 So.2d at 767 (citations omitted). McKee dealt with a much larger award than that in the case at bar, but there was at least some evidence presented in support of the award. This Court reversed the trial court's award and remanded for further hearings.
McKee is followed by Bumgarner v. Bumgarner, 475 So.2d 455 (Miss. 1985), where an award of $2000.00 was reversed and remanded because there was practically no evidence presented as to the guidelines supplied in McKee. Still, there was more evidence presented in Bumgarner than there was in the case at bar. See also Carpenter v. Carpenter, 519 So.2d 891 (Miss. 1988) ($2800.00 award reversed and rendered where not justified by the evidence).
Because there was no evidence presented to the Court in regard to attorney fees by Beverly Smith and because for this Court to approve attorney fees in this instance would be to reward Beverly Smith even though she admittedly refused to carry out the order of the court, this Court will reverse as to attorney's fees.
AFFIRMED IN PART; REVERSED AND RENDERED IN PART.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON and BLASS, JJ., concur.