## IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2009-CT-00626-SCT

*CHARLES B. GRAVES, JR.*

*v.*

*STATE OF MISSISSIPPI*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 03/12/2009 |
| TRIAL JUDGE: | HON. ALBERT B. SMITH, III |
| COURT FROM WHICH APPEALED: | TUNICA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | STEVEN ELLIS FARESE, JR. |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: LADONNA C. HOLLAND |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | REVERSED AND RENDERED - 07/28/2011 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC**.

## DICKINSON, PRESIDING JUSTICE, FOR THE COURT:

¶1.     When a prosecutor was not prepared to proceed to trial and had not produced a video to defense counsel, a circuit judge held him in criminal contempt and ordered him incarcerated. Because the judge denied the prosecutor due process of law, and because the record contains insufficient evidence of criminal contempt, we reverse and render.

## FACTS

¶2.     Tunica County Prosecutor Charles Graves appeared in circuit court on March 12, 2009, with three DUI cases on the docket. Both Graves and defense counsel informed

Circuit Court Judge Albert Smith that the first two cases were not ready to proceed because defense counsel had not been provided the video recordings of the arrests.

¶3. It is less than clear why the video recordings were not produced to defense counsel, but the transcript does indicate that Graves had requested the video recordings from the Tunica County Sheriff's Department several months prior to the trial, and they had not been produced. When asked why, Deputy Ricky Ray, referring to one of the videos, stated: "It could have been gotten to. All [Graves] had to do was go over to the property room and get the tape, just like I did this morning."

¶4. Graves argued that, after he requested the tapes, the ball was in the sheriff's court, and that he could not unilaterally appear at the sheriff's office and take possession of evidence.

¶5. Graves told Judge Smith that he asked Deputy Ray to show the tapes to defense counsel two weeks earlier, but the deputy had said he did not have the tapes with him at that time. Both Graves and defense counsel agreed that, because the video recordings had not been produced by the sheriff's office, the cases should be dismissed.

¶6. Upon being advised that the first two cases were not ready to proceed to trial, Judge Smith responded: "You are both in contempt of court! You are not ready. Something is wrong in this thing. You better be ready on this thing. That's two contempts you got on the record, two cases."

¶7. When the third case—*State v. Zylka*—was called, the defense attorney was not present. Graves informed the court that he had agreed not to oppose a continuance because defense counsel had a conflict, but that defense counsel would need to move the court for the continuance.

2

¶8. Judge Smith ordered that the trial begin anyway, but changed his mind and halted the proceedings during the direct examination of the first witness because the defendant had no attorney. Although Judge Smith later entered a written order of contempt that recited that Graves had been held in contempt during the *Zylka* trial, the State concedes on appeal that "it does not appear . . . that Graves was held in contempt a third time."

¶9. Judge Smith sentenced Graves to two days in jail and fined him $100. While Graves was in jail, Judge Smith presided over a contempt hearing, following which, he modified his prior order by reducing Graves's jail term to time served, but left the $100 fine intact.

¶10. Graves appealed his conviction and sentence, and the Court of Appeals reversed, finding insufficient evidence of the necessary criminal intent.[1] While we agree with the Court of Appeals, we granted certiorari to clarify certain aspects of the law of contempt.

## ANALYSIS

¶11. While every case turns on its particular facts, our law includes general rules that apply to contempt proceedings. We begin our analysis of this case with a brief overview of those rules to provide guidance to our judges and notice to the attorneys who practice before them.

> **The purpose of civil contempt is to compel compliance with the court's orders, admonitions, and instructions, while the purpose of criminal contempt is to punish.**

¶12. Judges use the power of civil contempt to compel compliance with their instructions, admonitions, and previous orders; and they use the power of criminal contempt to punish

---

[1] *Graves v. State*, ___ So. 3d ___, 2010 WL 3222038 (Miss. Ct. App. Aug. 17, 2010).

inappropriate behavior, such as insulting remarks to the court,[2] or acts that demonstrate the accused "wilfully and deliberately ignored the order of the court."[3] A court's inherent power and authority to punish litigants and attorneys for criminal contempt "is a necessary and integral part of the independence of the judiciary, and is absolutely essential to the performance of the duties imposed upon them by law."[4]

¶13. Although most contempt is either civil or criminal, a single act—or failure to act—could lead to both civil and criminal contempt.[5] For instance, an attorney refusing to comply with a court's order to produce a particular document could be held in contempt and incarcerated until the document is produced, or until it becomes clear that incarceration will not lead to compliance with the order. This would be civil contempt.[6]

¶14. But there are many reasons why the attorney may have failed to produce the document. Where the reason is frivolous or disrespectful, the judge may also hold the attorney in criminal contempt and order punishment of a fine, incarceration for a specific time, or both.[7] The judge may determine that criminal contempt is inappropriate where the

---

[2] *In re Smith*, 926 So. 2d 878, 888 (Miss. 2006) (citing *Neely v. State*, 54 So. 315, 316 (Miss. 1911)).

[3] *R.K. v. J.K.*, 946 So. 2d 764, 778 (Miss. 2007) (citing *Mizell v. Mizell*, 708 So. 2d 55, 64 (Miss. 1998); *Cooper v. Keyes*, 510 So. 2d 518, 519 (Miss. 1987)).

[4] *Gompers v. Bucks Stove & Range Co.*, 221 U. S. 418, 450, 31 S. Ct. 492, 501, 55 L. Ed. 797 (1911).

[5] *See, e.g., Sappington v. Sappington*, 147 So. 2d 494 (Miss. 1962).

[6] *In re Williamson*, 838 So. 2d 226, 237 (Miss. 2002) ("If the primary purpose of the contempt order is to enforce the rights of private party litigants or enforce compliance with a court order, then the contempt is civil.").

[7] *See, e.g., Purvis v. Purvis*, 657 So. 2d 794 (Miss. 1994).

attorney's refusal to produce the document was not unreasonable or disrespectful—for instance, where the attorney had a good-faith belief that the document was privileged.

**In certain narrow circumstances, judges should recuse and allow another judge to preside over the contempt proceedings.**

¶15. First, although not raised in this case, where the provisions of Canon 3E of the Code of Judicial Conduct apply, a judge must always recuse and allow another judge to preside over contempt proceedings, civil or criminal. Also, where an accused allegedly commits an act of criminal contempt that requires the judge to rely—in whole or in part—on conduct that occurred outside the courtroom, and the judge is the complaining party (that is, no party to the litigation moved the court for an order of criminal contempt), due process requires that the accused be afforded an "opportunity to be heard 'at a meaningful time and in a meaningful manner.'"[8] One accused of criminal contempt is entitled to the same protections as any criminal defendant. For example, if the punishment is a fine exceeding $500 or imprisonment for more than six months, the accused is entitled to a trial by jury.[9]

¶16. Our caselaw has incorporated various labels, such as direct, indirect, and constructive contempt. These labels can sometimes lead to the false notion that a particular label requires a particular procedure. Regardless of the label, the guidelines set forth above should be applied in cases of contempt.

**In the case before us today, Graves had a due-process right to notice and a hearing before a different judge.**

---

[8] ***Dennis v. Dennis***, 824 So. 2d 604, 609 (Miss. 2002) (quoting ***Mathews v. Eldridge***, 424 U.S. 319, 333, 96 S. Ct. 893, 902, 47 L. Ed. 2d 18 (1976); ***Armstrong v. Manzo***, 380 U.S. 545, 552, 85 S. Ct. 1187, 1191, 14 L. Ed. 2d 62 (1965)).

[9] ***Walls v. Spell***, 722 So. 2d 566, 574 (Miss. 1998).

5

¶17.    This Court—in reviewing criminal-contempt cases—proceeds "*ab initio* and will determine on the record whether the person in contempt is guilty of contempt beyond a reasonable doubt."[10]  The State has the burden of proving—from the appellate record—the elements of contempt beyond a reasonable doubt.[11]

¶18.    In this case, it is undisputed that the convictions involve criminal contempt.  The State contends that Graves's conduct amounted to direct criminal contempt, which "involves words spoken or actions committed in the presence of the court that are calculated to embarrass or prevent the orderly administration of justice."[12]  On the other hand, Graves contends he was punished for the out-of-court conduct mentioned in Judge Smith's contempt order, so he argues the citations were for indirect contempt.[13]

¶19.    In the *Murphy* case, Judge Smith held Graves in contempt because he "failed to adequately prepare for this case [and] wholly failed to follow this [c]ourt's previous order in this matter. . . .  Mr. Graves . . . [is] hereby in contempt of this [c]ourt by [*sic*] failing to follow its previous order."  And concerning *Woods*, Judge Smith held that Graves "had [not] asked for a continuance as required, nor . . . viewed the tape [that] the arresting officer said that either attorney could have obtained."  In summary, much of the offending conduct cited by Judge Smith occurred—or should have occurred—outside the courtroom, so we agree

---

[10] *Williamson*, 838 So. 2d at 237.

[11] *Brame v. State*, 755 So. 2d 1090, 1093 (Miss. 2000) (citing *In re Holmes*, 355 So. 2d 677, 679 (Miss. 1978)).

[12] *In re Hampton*, 919 So. 2d 949, 955 (Miss. 2006) (citing *Williamson*, 838 So. 2d at 237–38; *Moulds*, 791 So. 2d at 224–25).

[13] *In re Hampton*, 919 So. 2d at 955 ("[C]onstructive contempt involves actions [that] are committed outside the presence of the court . . . .").

with Graves that this case is one of indirect criminal contempt—that is, for acts that—in whole or in part—occurred outside the presence of the judge.

¶20. In presenting its case on appeal, the State has the burden of proving to us beyond a reasonable doubt that Graves "wilfully and deliberately ignored the order of the court."[14] The State contends it met its burden in the *Murphy* case because Graves failed to retrieve the videotape and give it to defense counsel despite the court's previous order to do so. Judge Smith asked Officer Ricky Ray (the arresting officer in the underlying DUI case) whether Graves had access to the tape. Officer Ray replied: "All [Graves] had to do was go over to the property room and get the tape, just like I did this morning."

¶21. On the other hand, Graves claims that he had requested the tape months before the second trial date and that the officer never released it to him. Graves also claims that it would have been improper for him to have taken the tape from the property room, "thereby breaking the chain-of-custody for the evidence."

¶22. There is no other evidence in the record suggesting that Graves "wilfully and deliberately" ignored the court's order. We hold that the State presented insufficient evidence to prove, beyond a reasonable doubt, that Graves "wilfully and deliberately ignored the order of the court" in the *Murphy* case.[15] And because it is undisputed that there was no

---

[14] *R.K.*, 946 So. 2d at 778.

[15] *Id.*

prior court order in the **Woods** case, there was no indirect criminal contempt as a matter of law.[16]

¶23.　But even if the State had met its burden, the conviction for indirect criminal contempt could not stand. Judge Smith was the complainant for alleged criminal contempt that occurred, at least in part, outside his presence, so Graves was entitled to due-process notice and a hearing.[17] As discussed above, criminal contempt often takes the form of conduct that "embarrass[es] the court," or that "consist[s] of an open insult . . . to the person of the presiding ju[dge] . . . ."

¶24.　We have held that, in cases of indirect or constructive criminal contempt, "where the trial judge has substantial personal involvement in the prosecution, the accused contemnor must be tried by another judge."[18] While we continue to emphasize that not every personal involvement requires recusal,[19] examples of "substantial personal involvement in the prosecution" warranting recusal include cases where the trial judge acts as a "one-man grand jury;"[20] where the trial judge is "instrumental in the initiation of the constructive-contempt

---

[16] *See, e.g.,* **Premeaux v. Smith**, 569 So. 2d 681, 684 (Miss. 1990) (existence of a valid order is prerequisite to a finding of indirect or constructive contempt).

[17] **In re Smith**, 926 So. 2d at 888 (citing **Williamson**, 838 So. 2d at 226).

[18] **Cook v. State**, 483 So. 2d 371, 376 (Miss. 1986) (citing **Mayberry v. Pennsylvania**, 400 U.S. 455, 465–66 (1971)).

[19] *See* **Cook**, 483 So. 2d at 377 n.6.

[20] **In re Murchison**, 349 U.S. 133, 75 S. Ct. 623, 99 L. Ed. 942 (1955).

proceedings;"[21] and where the trial judge "acts as prosecutor and judge."[22] In this case, Judge Smith should not have presided over Graves's contempt proceeding.

¶25.　We hold that Graves was denied his constitutional right to due process of law. He was given no notice of the hearing, and he was not informed of the charges against him until moments before he was taken to jail. When the court did later conduct a hearing, Graves was not present, and the hearing was conducted by Judge Smith, rather than a different judge, as required by our precedent. And in finding Graves was in contempt of court, the judge relied on matters that did not occur in his presence. Under such circumstances, we must reverse and render Graves's convictions.

## CONCLUSION

¶26.　Of the three counts of contempt listed in the trial court's order, one—*Zylka*—was undisputedly erroneous; another—*Woods*—was unsupported by any evidence; and the third—*Murphy*—was not supported by sufficient evidence of the necessary intent. And in all three cases, Graves was denied his right to due process. Accordingly, Graves's convictions are reversed and the order of the Tunica County Circuit Court is vacated.

¶27.　**THE JUDGMENT OF THE COURT OF APPEALS IS AFFIRMED. THE JUDGMENT OF THE CIRCUIT COURT OF TUNICA COUNTY IS REVERSED AND RENDERED.**

　　**WALLER, C.J., CARLSON, P.J., RANDOLPH, LAMAR, KITCHENS, CHANDLER AND PIERCE, JJ., CONCUR. KING, J., NOT PARTICIPATING.**

---

[21] *Terry v. State*, 718 So. 2d 1097, 1105 (Miss. 1998).

[22] *Cook*, 483 So. 2d at 376.

9